869 F.2d 202
 57 USLW 2525
 Cheryl ROBINSON, on behalf of herself and the class she
represents and Philadelphia Citizens in Action, on
behalf of itself, its members, and the
class it represents
v.
John R. BLOCK, United States Secretary of Agriculture,
individually and in his official capacity, Walter W. Cohen,
Pennsylvania Secretary of Public Welfare, individually and
in his official capacity, and Don Jose Stovall, Executive
Director of the Philadelphia County Assistance Office,
individually and in his official capacity, Appellees.
Appeal of Cheryl ROBINSON, Annie Alvin, Gloria Pope and the
Philadelphia Citizens in Action, et al.
 No. 88-1111.
 United States Court of Appeals,
Third Circuit.
 Argued July 19, 1988.
Decided Feb. 28, 1989.
 
 David A. Super (argued), Washington, D.C., Jonathan M. Stein, Community Legal Services, Inc., Philadelphia, Pa., for appellants.
 LeRoy S. Zimmerman, Atty. Gen., David M. Donaldson (argued), Gregory R. Neuhauser, Sr. Deputy Attys. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, Philadelphia, Pa., for Com. of Pennsylvania appellees.
 John R. Bolton, Asst. Atty. Gen., Edward S.G. Dennis, Jr., U.S. Atty., Robert S. Greenspan, Michael E. Robinson (argued), Civ. Div., Room 3617, U.S. Dept. of Justice, Washington, D.C., for Federal appellee.
 Before HIGGINBOTHAM, BECKER and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 BECKER, Circuit Judge.
 
 
 1
 This is an action brought on behalf of a class of food stamp and welfare recipients by Cheryl Robinson, a food stamp recipient, and Philadelphia Citizens in Action, a welfare rights advocacy group, challenging the manner in which the defendants, federal and Commonwealth of Pennsylvania officials, have administered certain eligibility and benefit level provisions of the Food Stamp Act of 1964 as amended, 7 U.S.C. Secs. 2011-2030 (1982 & Supp. IV 1986) ["the Act"] through various federal and state regulations and agency procedures. Plaintiffs' primary claim arises from defendants' interpretation of the 1981 and 1982 amendments to the Act which provided that "siblings who live together" must be combined into one food stamp household rather than treated as separate households for benefit calculation purposes, 7 U.S.C. Sec. 2012(i)(3).
 
 
 2
 Plaintiffs complain that the defendants have created an irrebuttable presumption that siblings who live at the same address in fact live together and therefore constitute one household, in violation of the statute. This is a distinction of significance because, due to the economies of scale that may be realized in group purchase and preparation of food, a single household will receive a lower amount of food stamp benefits than will two or more households with the same total number of members as the single household. Plaintiffs also claim that defendants violated their due process rights by failing to send individual notices of eligibility or program requirements to the head of each family that has been combined under the sibling rule into a single food stamp household.
 
 
 3
 Plaintiffs raise a wholly separate claim arising out of the requirements of 7 C.F.R. Sec. 273.2(d) (1988) (which are, in turn, derived from the verification provisions of the Act, 7 U.S.C. Sec. 2020(e)(2) (1982 & Supp. IV 1986)) that households seeking eligibility for food stamps, Aid to Families with Dependent Children ("AFDC"), and Medical Assistance ("MA"), must cooperate with the state agency, and that certain information provided in the food stamp application must be verified through, inter alia, the use of third-party information or documentation, to establish the accuracy of statements on the application. Plaintiffs complain that the Pennsylvania Department of Public Welfare ("DPW"): (1) engages in a pattern and practice of repeatedly demanding from applicants and recipients information not clearly specified in the benefit application; and (2) denies plaintiffs benefits without offering them alternative means of proving their eligibility when a third party refuses to cooperate, in violation of the Due Process Clause, of 42 U.S.C. Sec. 1983 (1982), and of other federal statutes and regulations.[1]
 
 
 4
 The district court granted the defendants' motion to dismiss the third party verification claim, and granted defendants' motions for summary judgment as to the remaining claims. It also denied plaintiffs' motion for class action certification of the sibling rule and third party verification class claims. Finally, the court denied plaintiffs' motion to amend their complaint to add Annie Alvin and Gloria Pope as plaintiffs.
 
 
 5
 For the reasons that follow, we conclude that the district court erred in its grant of summary judgment as to the sibling rule claims, in granting the motion to dismiss the third party verification claims and in denying leave to amend to permit the addition of Annie Alvin and Gloria Pope as parties; hence we will reverse and remand for further proceedings. In all other respects, including disposition of the notification claim and the motion for class certification, the judgment and orders of the district court will be affirmed.
 
 I. FACTS AND PROCEDURAL HISTORY
 A. The Parties
 
 6
 In their second amended complaint, plaintiffs proposed two classes of plaintiffs. Class A would consist of Cheryl Robinson, Annie Alvin and Philadelphia Citizens in Action and would raise the sibling household claims. Class B would consist of all of Class A plus Gloria Pope, and would raise the third party verification claims.
 
 1. Plaintiff Cheryl Robinson
 
 7
 Plaintiff Cheryl Robinson, a food stamp recipient, lived with her eleven year-old son in a three-story house owned by her brother.[2] Cheryl's sister Margo Robinson and her daughter, also food stamp recipients, eventually moved into the house, although Cheryl apparently had no say in the matter. Over the years, Cheryl and Margo had several serious disagreements, and living in close quarters only seemed to exacerbate the existing tensions between them. When DPW discovered that Cheryl was living in the same house as her sister, she was given notice that unless she appealed, her food stamp benefits would be terminated. Cheryl did not file a timely appeal and her food stamp case was closed.
 
 
 8
 Cheryl and her sister were then notified by DPW, through the County Assistance Office, that under the federal and state regulations they would have to be included in the same household unit for food stamp purposes. The sisters agreed that Margo's name would be designated as "payment name" for purposes of receiving food stamps for the household. At one point, relations between the sisters became so strained that Cheryl asked her caseworker if she could be designated as payment name. The caseworker suggested that Cheryl find another place to live, apart from her sister.
 
 
 9
 Soon after the Robinsons were combined into a single household for purposes of receiving food stamps, the local caseworker discovered that Margo's daughter was not living with her, as she had claimed. As a result, Margo's food stamp benefits were terminated, thereby also depriving Cheryl and her son of benefits. Cheryl appealed.
 
 
 10
 At about the same time, the DPW caseworker began to suspect that Cheryl's brother, Keith Robinson, was living with Cheryl, inasmuch as his driver's license and voter registration card indicated his address as being the same as hers. The caseworker gave Cheryl an opportunity to show that Keith lived elsewhere--a burden that was hers, see infra at 208 --and the caseworker also attempted to establish where he lived. Because Cheryl was unable (or unwilling) to provide verification that her brother was living elsewhere, her reapplication for food stamps was denied. Cheryl again appealed. At her hearing, Cheryl testified that she did not want to provide the caseworker with a copy of her brother's voter registration card or driver's license, which listed her mother's address, because she knew that this information was false.
 
 
 11
 In light of these various problems, the caseworker made two appointments for Cheryl to reapply for benefits in her own name at a different location. Cheryl failed to, or chose not to, make such a reapplication.
 
 
 12
 On July 13, 1984, DPW's hearing officer denied both of Cheryl's appeals. The hearing officer stated that DPW's "[r]egulations are explicit in providing that in no event is separate household status extended to siblings unless one sibling is elderly or disabled" (emphasis added). After filing this suit for declaratory and injunctive relief, and some seven months after her food stamp benefits were discontinued, Cheryl moved to Michigan; her son remained in Philadelphia. Cheryl also seeks restoration of the benefits allegedly unlawfully denied her.
 
 2. Proposed Plaintiff Annie Alvin
 
 13
 Annie Alvin lived with her daughter in a building owned by the Philadelphia Housing Authority. Her sister Sharon and Sharon's son lived in the same building. The sisters had separate cooking facilities, bedrooms, living rooms, kitchens and telephones, but had common doors and stairs. Until February 1984, the sisters had received separate food stamp allotments. However, in February the DPW terminated Sharon's food stamp benefits and advised Annie that she would receive food stamps for a household that consisted of her family as well as Sharon's.[3] Because of this change, Sharon became uncooperative in paying her share of the rent and the utility bills. The friction between them increased to the point where Sharon moved out in September of 1984.
 
 
 14
 In December 1984, DPW informed Annie that she had received an overpayment of $1,134 in food stamps between April 1, 1983, and February 29, 1984. The basis for this calculation was the "sibling rule": for the period in question, the DPW combined the amount of food stamp benefits received by Annie and Sharon Alvin separately, and then subtracted the amount to which they were entitled as a single household. In December 1984, DPW demanded full repayment, in installments of at least $15 per month. As of this date, the DPW has not pursued collection activities nor reduced Annie's current allotment to recover the alleged past overissuances.[4]
 
 3. Proposed Plaintiff Gloria Pope
 
 15
 Gloria Pope, the only plaintiff who is solely a member of plaintiffs' proposed Class B, alleges that the DPW's third party verification procedures were unreasonably applied and that errors were made regarding her benefits which caused delay and inconvenience. In 1984, Pope, who had previously received public assistance, reapplied for AFDC, food stamp, and MA benefits. She was given a form PA 253, requesting various kinds of verification. Pope's application was denied, allegedly because of her failure to provide certain verification information. Pope alleges that this information was not requested on the PA 253.
 
 
 16
 Pope later reapplied for public assistance. Her application was again denied, this time allegedly because of problems Pope encountered in obtaining adequate third party verification of information she provided the DPW. To continue receiving public assistance, Pope alleges that she must submit to eligibility redeterminations for AFDC and MA, and recertifications of her food stamp eligibility at least once every six months. Moreover, she claims that defendants employ substantially the same policies, patterns and practices in requiring supplemental verification from applicants and recipients.
 
 
 17
 4. Plaintiff Philadelphia Citizens in Action
 
 
 18
 Philadelphia Citizens in Action ("Citizens") was added as a party in the first amended complaint. It is an organization of public assistance recipients which contends that some of its members have been denied food stamps and proper notice of action affecting their food stamps because they live in the same building as a sibling or because they are unable to comply with the DPW's third-party verification requirements. Citizens contends that it has been forced to expend time, money and resources advocating on behalf of recipients denied or threatened with denial of benefits because they resided in the same building as a sibling or because they could not produce the third party verification demanded by defendants. Finally, Citizens contends that many of its members have been or will be harmed by defendants' illegal practices.
 
 5. The Defendants
 
 19
 Defendants are John R. Block, the United States Secretary of Agriculture, Walter W. Cohen, Secretary of the Pennsylvania Department of Public Welfare, and Don Jose Stovall, Executive Director of the Philadelphia County Assistance Office.
 
 B. The Claims and Defenses
 
 20
 Plaintiffs set forth ten claims in their amended complaint, but these can essentially be reduced to two major claims. First, plaintiffs claim that defendants' implementation of the sibling rule violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. Sec. 1983, and the Food Stamp Act. Jurisdiction for the claim against the Secretary is premised upon 5 U.S.C. Secs. 702-706 (1982 & Supp. IV 1986) and 28 U.S.C. Sec. 1331.[5] Second, plaintiffs claim that the Commonwealth defendants' third party verification requirements, as applied in cases where an applicant for AFDC, food stamps, or MA cannot readily obtain the prompt cooperation of the third party, violates, inter alia, the Due Process Clause of the Fourteenth Amendment, 42 U.S.C. Sec. 1983, and several other federal statutes and regulations.
 
 
 21
 Plaintiffs primarily sought to enjoin defendants from: (1) denying or reducing food stamps to plaintiffs based upon their residence in the same building with their siblings, unless they actually live together; (2) denying plaintiffs' application for food stamps based upon the non-cooperation of a sibling or member of a sibling's household; and (3) delaying or denying AFDC, food stamp, and MA benefits due to applicants' or recipients' failure to promptly provide third party verification where the applicant or recipient cannot obtain prompt third party cooperation. Plaintiffs also sought declaratory relief and restored benefits for the named plaintiffs.
 
 1. The Sibling Rule Claim
 
 22
 Eligibility and benefit levels for food stamps are determined by the United States Department of Agriculture, acting through state agencies such as DPW, and are based upon need. See 7 U.S.C. Secs. 2017(a), 2020(e). Benefits are allocated per household, rather than per individual. The statute defines a food stamp household as "(1) an individual who lives alone or who, while living with others, customarily purchases food and prepares meals for home consumption separate and apart from the others, [or] (2) a group of individuals who live together and customarily purchase food and prepare meals together for home consumption." 7 U.S.C. Sec. 2012(i). However, through amendments in 1981 and 1982, Congress amended the Food Stamp Act to provide that "parents and children, or siblings, who live together shall be treated as a group of individuals who customarily purchase and prepare meals together for home consumption even if they do not do so, unless one of the parents, or siblings, is an elderly or disabled member." 7 U.S.C. Sec. 2012(i)(3) (emphasis added). The legislative history to the 1982 amendment notes that the Committee expected that caseworkers "could effectively question claims and that the burden of proof for establishing 'separateness' would be placed on the household, not on the administering agency." Pub.L. No. 97-253, 1982 U.S.Code Cong. & Admin. News 1641, 1664.
 
 
 23
 Pursuant to authority granted in the statute, 7 U.S.C. Sec. 2013(c), the Secretary promulgated the following regulation, which was in effect at the time the claims that are the subject of the present litigation arose:
 
 
 24
 Household definition. (1) A household may be composed of ... (iii) A group of individuals who live together and customarily purchase food and prepare meals together for home consumption ... (3) In no event shall nonhousehold member status ... or separate household status be granted to ... (iv) Siblings (natural, adopted, half or step brothers and sisters), unless at least one sibling is elderly or disabled.
 
 
 25
 7 C.F.R. Sec. 273.1(a) (1983) (emphasis added).[6] The DPW has adopted nearly identical regulations.
 
 
 26
 The gravamen of plaintiffs' claim is that while the Food Stamp Act confines the sibling rule to siblings "who live together," neither the federal nor state regulations included the "live together" test in their regulations implementing the sibling rule. While the Food Stamp Act creates an evidentiary issue as to whether siblings are "living together," the regulations implementing the sibling rule appear to eliminate this evidentiary issue, and instead create an irrebuttable presumption that siblings live together, thus constituting one household. More precisely, as plaintiffs clarified their position at oral argument, their claim is that the local DPW offices were and still are applying a "same address" test to determine whether siblings lived together. In response to a hypothetical question posed by the Court, plaintiffs provided an example of the same address test: if one sibling lived on the first floor of a building, and the other sibling lived on the 23rd floor of that building, the siblings, because of the same address test, would be considered to be living together. Although we do not suggest that the type of fact situation described in the hypothetical is at work here, the hypothetical does help to frame the issue. See discussion infra at 212-14.
 
 
 27
 The Secretary, however, stated at oral argument that he does not apply a same address test, i.e., an irrebuttable presumption that siblings who reside at the same address in fact live together and therefore constitute one household. The Secretary maintains on appeal that despite the difference in wording between the statute and the regulation, "nothing in the Secretary's regulation precludes a claimant from asserting that he or she does not live with a sibling." Plaintiffs respond, however, that the DPW has not changed its regulations to reflect the "live together" component of the statute, and that under the current regulations caseworkers would not accept--indeed, would be precluded from accepting--siblings' claims that they do not live together. At the conclusion of oral argument the Court, sensing that the parties were within reach of agreement, requested each party to submit proposed language of the regulation implementing the sibling rule which would be consistent with the statute. Responding to the plaintiffs' submission, the Secretary stated that he was willing to stipulate to the following, which, he maintained, was based on current law and policy:[7]
 
 
 28
 (1) In implementing the "live together" test for siblings, the defendants are required to apply the sibling rule to siblings who are found to live together in light of all the circumstances;
 
 
 29
 (2) defendants are required to offer siblings a reasonable opportunity to present evidence bearing on whether they in fact "live together"; and
 
 
 30
 (3) defendants are required to make any necessary adjustments in the allotment of food stamps, including providing retroactive benefits under 7 U.S.C. Sec. 2023(b), and to refrain from alleging overissuances of food stamps to siblings who can show that they do not or did not "live together".
 
 
 31
 Although the plaintiffs sought a more exacting statement, we view the Secretary's proffer as sharply narrowing the scope of the dispute between the parties over the sibling rule issue. In stating that the sibling rule may only be applied to siblings who are found to live together "in light of all the circumstances," the Secretary and the DPW are conceding that a same address test is an impermissible way to implement the sibling rule and that to apply such a test would be to disregard all the circumstances that must be considered in order to determine whether siblings live together. Unfortunately, however, the defendants' proffer has not obviated the need for this opinion, because the plaintiffs are unwilling to accept it without more detailed protocols for its application. Moreover, there may indeed be situations in which siblings living together, as did the Robinsons and Alvins, could be found not to live together after considering "all the circumstances." Indicia of not living together might include, inter alia, separate entrances and locks, separate finances, utility bills and telephones, and essentially separate living quarters. Of course, determining what constitutes living together remains with DPW. The proffer does, however, form much of the basis for our result.
 
 2. The Third Party Verification Claim
 
 32
 The Food Stamp Act provides that a household's application for food stamps "will be subject to verification by Federal, State, and local officials to determine if such information is factual." 7 U.S.C. Sec. 2020(e)(2). Households seeking eligibility for food stamps must cooperate with the State agency, and certain information provided in the food stamp application must be verified through, inter alia "the use of third-party information or documentation to establish the accuracy of statements on the application." 7 C.F.R. 273.2(f). Pennsylvania's regulations conform substantially with the federal regulations. See 55 Pa.Code Sec. 505.4 (1986). Although federal regulations for AFDC and MA benefits do not specify eligibility verification requirements in the same detail as the federal and state food stamp regulations, common applications for all three types of benefits are contemplated. Compare 42 U.S.C. Secs. 602(a)(10), 604, 1396a(a)(8), 1396c with 7 U.S.C. Sec. 2020(e)(2).
 
 
 33
 The core of plaintiffs' third party verification claim is set forth in their amended complaint:
 
 
 34
 When applicants and recipients appear at application, redetermination, or recertification interviews without verification [that DPW] consider[s] adequate, [DPW will] deny or delay assistance to these applicants and recipients whether or not the nature of the verification demanded was clearly identified on the PA 253 or other notice given to the applicant or recipient, whether or not alternative verification would be available on a particular issue, and whether or not the applicant or recipient was unable to produce the verification because of the refusal or failure of a third party to cooperate.
 
 Amended Complaint p 47 at 14.[8]
 
 35
 Plaintiffs' claim regarding third party verification can be thus encapsulated into two broad allegations: (1) DPW engages in a pattern and practice of repeatedly demanding from applicants and recipients information not clearly specified in the benefit application; and (2) DPW denies plaintiffs benefits without offering them alternative means of proving their eligibility when a third party refuses to cooperate, violating the Due Process Clause, 42 U.S.C. Sec. 1983, and other federal statutes and regulations.
 
 
 36
 On appeal, defendants have not responded directly to plaintiffs' claim of DPW's pattern and practices regarding third party verification. Instead, the defendants assert: (1) that plaintiff Robinson does not present a case or controversy because she has left Pennsylvania and because she never suffered an injury as a result of the third party verification requirements; and (2) that proposed plaintiffs Alvin and Pope lack standing. We address these contentions in the margin.[9]
 
 C. The District Court Memorandum Opinion
 
 37
 The defendants moved for summary judgment on the merits as to claims one through seven of the amended complaint, i.e., the sibling household issues. As noted, they also moved for summary judgment on grounds of mootness and lack of standing. Neither party moved for summary judgment on the merits of the Class B claim. Therefore, in the absence of affidavits, answers to interrogatories, depositions or other evidence, see Fed.R.Civ.P. 56(c), the order dismissing the Class B claims appears in substance to be a dismissal pursuant to Fed.R.Civ.P. 12(b)(6).
 
 
 38
 In granting defendants' motions as to the sibling rule claim, the district court found the sibling household issue to be "directly controlled" by the United States Supreme Court's decision in Lyng v. Castillo, 477 U.S. 635, 106 S.Ct. 2727, 91 L.Ed.2d 527 (1986). In that case, the Supreme Court held constitutional the statutory distinction, embodied in the 1981 and 1982 amendments to the Food Stamp Act, between (1) parents, children and siblings and (2) all other groups of individuals. Id. at 639, 106 S.Ct. at 2730. As we have explained, the issue is more complex, hence the court erred in finding Castillo dispositive.
 
 
 39
 With regard to plaintiffs' third party verification claims, the district court stated that the individual claims presented were capable of being handled through the administrative hearing process. The court therefore held that plaintiffs' third party allegations failed to state a due process claim and dismissed them, apparently pursuant to Fed.R.Civ.P. 12(b)(6). See supra at 210 n. 9. However, the district court did not address plaintiffs' claim that, notwithstanding the legality of the applicable regulations, the DPW is engaged in a pattern and practice of not complying with those regulations.
 
 
 40
 In addition to dismissing the sibling rule and third party verification claims, the district court denied plaintiffs' motion for class certification. The district court also denied plaintiffs' motion for leave to file a second amended complaint (which would have added plaintiffs Annie Alvin and Gloria Pope) on various procedural grounds. See supra at 210 n. 9. Finally, the court granted summary judgment for defendants on plaintiffs' claim that defendants violated their due process rights by failing to send notices regarding food stamps to the head of each family within an agglomerated food stamp household, essentially without explanation.
 
 II. THE SIBLING RULE ISSUE
 
 41
 In addressing the sibling rule issue, the crucial issues are how the USDA and the DPW implemented the rule in the case of Cheryl Robinson and Annie Alvin, and whether this method of implementing the rule is permissible under the Food Stamp Act. For the reasons given below, we agree with plaintiffs' contention that DPW used a same address test in determining that Cheryl Robinson and her sister and Annie Alvin and her sister lived together. By "same address test" we mean that DPW applied a conclusive presumption that siblings who live at the same address live together for purposes of the Act. We hold that such a test was not a permissible way for the USDA and DPW to implement the statutory sibling rule.
 
 A. Legislative History of the Sibling Rule
 
 42
 Before 1977, a food stamp household was defined as an "economic unit," a term which took into account the "common living expenses" of all members of a group of people. The Food Stamp Act of 1977 replaced the "economic unit" test with a new test that still remains the focus in determining what constitutes a household: "live together and customarily purchase food and prepare meals together for home consumption." Pub.L. No. 95-113, Sec. 1301, 91 Stat. 958, 960 (1977). Congress thus made the fact that a group of individuals may share nonfood living expenses irrelevant for purposes of determining whether the group constitutes a household. H.R.Rep. No. 95-464, 95th Cong., 1st Sess. 143 (1977), reprinted in 1977 U.S.Code Cong. & Admin. News 1704, 1978, 2113.
 
 
 43
 In 1981, Congress inserted into the statutory section defining household the provision that "parents and children who live together shall be treated as a group of individuals who customarily purchase and prepare meals together for home consumption even if they do not do so." Pub.L. No. 97-35, Sec. 101, 95 Stat. 357, 358 (1981) (emphasis added). The 1981 amendment thereby created an irrebuttable presumption that "parents and children who live together" purchase and prepare meals together for home consumption.
 
 
 44
 In 1982, Congress again amended the Act and added the sibling rule to the definition of household. Pub.L. No. 97-253, 96 Stat. 772. This amendment merely added the words "or siblings" to the 1981 amendment that created the parent-children rule; the statute now provides that "parents and children, or siblings, who live together shall be treated as a group of individuals who customarily purchase and prepare meals together for home consumption even if they do not do so." 7 U.S.C. Sec. 2012(i) (1982). This amendment was enacted by Congress in order to extend the step taken in 1981 of "limiting [the] potential manipulation of food stamp rules" that occurs when parents and children claim separate food stamp household status, although they live together, merely by refraining from purchasing food and preparing meals together. The 1982 amendment followed this rationale inasmuch as it was "designed to further limit the number of instances in which household members may manipulate current rules and gain status as separate food stamp households (and receive, thereby, larger benefits), although they live together and depend on one another for support." S.Rep. No. 97-504, 97th Cong., 2nd Sess. 24-25 (1982), reprinted in 1982 U.S.Code Cong. & Admin. News 1641, 1662.
 
 
 45
 We conclude that the 1981 and 1982 amendments did not change the substance of the "live together" test but merely closed loopholes that enabled groups of individuals who lived together, i.e., parents/children and siblings, to be treated as separate food stamp households merely because they did not (or claimed they did not) purchase food and prepare meals together. The amendments created irrebuttable presumptions that (1) parents and children and (2) siblings who live together also purchase food and prepare meals together for home consumption.
 
 B. Discussion
 
 46
 As noted earlier, the regulations omit the "live together" language of the Act. The language of the regulations would thus appear to preclude consideration of "all the circumstances" in rendering the "live together" determination, as is required. See supra at 209. This interpretation would result in the application of a same address test. The threshold question presented is whether DPW has employed such a test or instead has considered "all the circumstances" surrounding siblings' living situations. If we conclude that DPW did employ a same address test, we must then determine whether such an interpretation of the Act is permissible.
 
 
 47
 In reviewing the termination of Cheryl Robinson's food stamp allotment, there are undisputed facts in the record from which DPW reasonably could have concluded that (1) Cheryl and her sister Margo lived together; and (2) their brother Keith lived with them. As noted above, Cheryl and her sister lived in the same house owned by their brother Keith. Moreover, Keith Robinson's driver's license and voter registration card indicated that he lived with Cheryl and Margo. Despite Cheryl's assertions to the contrary, she was unable or unwilling to provide DPW, as requested, with notarized verification of her brother's true address. From these facts and others, and taking into account that the burden of proof for establishing 'separateness' is placed on the household, see supra at 208, we believe that DPW could have reasonably concluded that Cheryl Robinson lived with her siblings.
 
 
 48
 However, we cannot be certain that DPW relied upon these facts in reaching its conclusions. We are particularly concerned by the hearing officer's statement that "[r]egulations are explicit in providing that in no event is separate household status extended to siblings unless one sibling is elderly or disabled" (emphasis added). This statement essentially tracks the state regulation, and the hearing officer was thereby following DPW regulations that hearing officers may not invalidate or modify a departmental regulation.[10] In other words, the hearing officer felt obligated to base her decision on the state regulations, and apparently she was constrained from considering the "live together" language of the Act.
 
 
 49
 In light of these regulations and the hearing officer's remarks, we are unable to conclude that the facts noted above were dispositive in DPW's decision to terminate Robinson's food stamp allotment. It seems more reasonable to conclude that DPW followed its regulations that separate household status is not to be granted to siblings, and thereby applied a same address test. Despite the burden placed on households to establish "separateness," we do not believe that this burden has any relevance where the incorrect legal standard has been used by the agency. For similar reasons, it is reasonable to conclude that DPW followed the same methodology in reducing Alvin's food stamp allotment.
 
 
 50
 As noted earlier, there may indeed be situations in which siblings living in small dwellings could be found not to live together, after considering "all the circumstances." Indicia of "separateness" might include, inter alia, separate entrances and locks, separate finances, utility bills and telephones, and essentially separate living quarters. Of course, the "living together" determination remains with DPW. See supra at 209.
 
 
 51
 We concede the difficulty in attempting to ascertain the methodology employed by DPW in rendering its "live together" determination. However, for the reasons noted above, and because we believe caution is necessary where, as here, benefits are terminated or reduced, we conclude that DPW applied a same address test in determining whether Cheryl Robinson and her siblings and Annie Alvin and her sibling lived together. The question with which we are then faced is whether such an interpretation of the Act is permissible.
 
 
 52
 As a reviewing court, we must reject an administrative construction of a statute if it is "inconsistent with the statutory mandate or ... frustrate[s] the policy that Congress sought to implement." Securities Industry Association v. Board of Governors of the Federal Reserve System, 468 U.S. 137, 143, 104 S.Ct. 2979, 2982, 82 L.Ed.2d 107 (1984) (quoting FEC v. Democratic Senatorial Campaign Committee, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981)). See also Morton v. Ruiz, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974) ("In order for an agency interpretation to be granted deference, it must be consistent with the congressional purpose."). Our reading of the statutory provision defining household, the legislative history of its various amendments, and the policies behind the several revisions to the definition convinces us that the USDA's and DPW's application of a same address test in implementing the statutory sibling rule is not only inconsistent with Congress' policy in enacting the statute, but also is not a rational interpretation of the statute. The defendants have essentially so conceded. See supra at 209.
 
 
 53
 In reviewing the several amendments to the definition of food stamp household, and the policies behind them, our focus has been limited to determining whether Congress intended that siblings who live at the same address should irrebuttably be considered as living together. Congress has delegated to the Secretary the authority to decide what is meant by the term "living together." 7 U.S.C. Sec. 2013(c). The Secretary has chosen not to define the term but to determine which individuals are living together through "the application of a reasonable judgment based on the circumstances of a particular living arrangement." 47 Fed.Reg. 52,328, 52,329 (1982). Indeed, at oral argument, plaintiffs' counsel stated that he was not asking the court to enunciate any particular standard for defining the term living together. Because of the congressional grant of authority, our inquiry here is therefore limited to whether a same address test can be construed to be an "application of a reasonable judgment" under any circumstances.
 
 
 54
 As we have explained, to apply a same address test in implementing the sibling rule would run afoul of Congress' intent in treating only groups of individuals who "purchase food and prepare meals together for home consumption" as a food stamp household. In the absence of additional evidence, there is no reason to believe that siblings who merely live at the same address customarily purchase food and prepare meals together for home consumption. Application of a same address test does not prevent the artificial manipulation of food stamp rules--the sole concern of the 1981 and 1982 amendments. It seems unlikely that siblings would choose to live at the same address for the sole reason that they might thereby be able to purchase and prepare food together (and hence more cheaply) yet still maintain, under the regulations, separate household status in order to gain a greater food stamp allotment.
 
 
 55
 With regard to the sibling rule issue, we will reverse and remand to the district court to determine whether Robinson and her sister, and Alvin and her sister, in fact lived together so as to constitute a single household under the Food Stamp Act. Although evidence that these siblings lived at the same address may be considered in making the "live together" determination, such evidence is not conclusive. The district court should ensure that in implementing the sibling rule, defendants shall, as they have conceded they must, see supra at 209: (1) apply the sibling rule to siblings who are found to live together in light of all the circumstances; (2) offer siblings a reasonable opportunity to present evidence bearing on whether they in fact live together; and (3) make any necessary adjustments in the allotment of food stamps, including providing retroactive benefits and refraining from alleging overissuances of food stamps, to siblings who can show that they do not or did not live together.[11] Additionally, the district court should order DPW to issue instructions to its caseworkers, if DPW has not already done so, that the sibling rule is only to be applied to siblings who live together, and that the fact that siblings reside at the same address is not conclusive evidence in deciding whether siblings live together.
 
 III. THE THIRD PARTY VERIFICATION ISSUE
 
 56
 The district court dismissed plaintiffs' complaint with regard to the third party verification allegations for failure to state a due process claim. The court noted that the individual claims presented in the complaint were capable of being handled through the administrative hearing process and that the regulations at issue comport with due process and federal law.
 
 
 57
 Our standard of review for Rule 12(b)(6) dismissals was stated in Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985) (citations omitted):
 
 
 58
 The standard by which the orders must be tested is whether taking the allegations of the complaint as true, ... and viewing them liberally giving plaintiffs the benefit of all inferences which fairly may be drawn therefrom, ... "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief."
 
 
 59
 Although the district court apparently believed that plaintiffs were challenging the third party verification regulations themselves, in fact, the second amended complaint makes clear that the plaintiffs are challenging the DPW's local offices' patterns and practices that violate these statutes and regulations. Given the allegations in the complaint and taking them as true, plaintiffs have stated a claim that would entitle them to relief. Plaintiffs should be given the opportunity to demonstrate instances where defendants' behavior violated their due process rights as well as other federal statutes and regulations. Therefore, with regard to the third party verification issue, we will reverse and remand to the district court to permit the case to proceed.
 
 IV. CONCLUSION
 
 60
 For the foregoing reasons, we will reverse the judgment of the district court and remand for that court to determine whether plaintiffs and their siblings lived together so as to constitute a single household under the Food Stamp Act. We will further reverse the order of the district court denying plaintiffs leave to amend their complaint to add Annie Alvin and Gloria Pope as parties, and direct that leave be granted. With regard to the third party verification claim, we will reverse the order dismissing the complaint and remand to the district court for further proceedings. In all other respects, the judgment and orders of the district court will be affirmed.[12]
 
 
 61
 Parties to bear their own costs.
 
 
 
 [1]
 42 U.S.C. Sec. 1983 encompasses claims based on violations by state officials of federal statutory as well as constitutional law. See Maine v. Thiboutot, 448 U.S. 1, 4-9, 100 S.Ct. 2502, 2504-06, 65 L.Ed.2d 555 (1980)
 
 
 [2]
 According to plaintiffs, the house was a rooming house that is designed for separate living by individuals and families
 
 
 [3]
 According to plaintiffs, Annie Alvin received $85 per month in food stamp benefits for her family from October 1983 through February 1984. After February 1984, Annie began to receive $74 per month in food stamps, for a household which now included her sister's family. The DPW agent told Annie that she owed $28 of these food stamps to Sharon, although Annie had no idea how that amount was determined
 
 
 [4]
 The DPW has the power to reduce a recipient's current food stamp allotment to recover past overissuances. 7 C.F.R. Sec. 273.18(g)(2) (1988)
 
 
 [5]
 Exhaustion of administrative remedies is not required where, as here, the issue presented is "strictly legal." See Facchiano v. United States Dep't of Labor, 859 F.2d 1163, 1168 n. 4 (3d Cir.1988); Patsy v. Bd. of Regents of the State of Fla., 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982) (exhaustion of state administrative remedies is not a prerequisite to an action under 42 U.S.C. Sec. 1983). As explained infra, we conclude that the issue presented in this case is how a provision of the Act, and the implementing regulations, should be interpreted. While we give res judicata effect to the factfindings of administrative agencies, we need not consider ourselves bound by their legal conclusions. See Univ. of Tenn. v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 3227, 92 L.Ed.2d 635 (1986) ("[W]e hold that when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." (citation omitted))
 
 
 [6]
 In 1987 the USDA amended this regulation which now more closely tracks the language of the Act. The regulation now provides: "Special Definition : (i) The following individuals living with others or groups of individuals living together shall be considered as customarily purchasing food and preparing meals together, even if they do not do so ... (D) Siblings (natural, adopted, half or stepbrothers and sisters) living together, unless at least one sibling is elderly or disabled." 7 C.F.R. 273.1(a)(2)(i)(D) (1987). The amended regulation was not applied retroactively. At oral argument, plaintiffs maintained that this amendment did not change defendants' practice in implementing the sibling rule
 
 
 [7]
 The Commonwealth in its submission stated that it concurred with the Secretary's stipulation
 
 
 [8]
 According to plaintiffs, form PA 253 is the state defendants' primary method of notifying applicants and recipients of AFDC, food stamps, and MA of the verification they must bring to their interviews
 
 
 [9]
 Robinson's appeal does not appear, at this juncture, to be moot inasmuch as she appears to have a "legally cognizable interest in the outcome" so that the Court can afford her "effectual relief" by finding that the DPW has been incorrectly implementing the statutory sibling rule, thereby enabling her to apply for restored food stamp benefits. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980); Jersey Central Power & Light Co. v. Township of Lacey, 772 F.2d 1103, 1108 (3d Cir.1985). Although the statutes providing for restored benefits have one-year limitations for commencing proceedings, further factual findings are needed to determine whether the limitations apply here. See 7 U.S.C. Secs. 2020(e), 2023(b). This issue can be considered on remand to the district court
 Alvin has standing because the DPW's request for repayment of past overissuances of food stamp benefits establishes that (1) she has suffered some "threatened injury" resulting from defendants' putatively illegal conduct; (2) this injury can be traced to the action challenged here; and (3) the injury is likely to be redressed by a favorable decision. Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Furthermore, despite the district court's suggestion to the contrary, it is clear that exhaustion of state administrative remedies is not a prerequisite to an action under 42 U.S.C. Sec. 1983. Patsy v. Bd. of Regents of the State of Fla., 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). Alvin's sibling rule claim is based in part on Sec. 1983.
 Because the district court dismissed the third party verification claim on defendants' Fed.R.Civ.P. 12(b)(6) motion, there are not sufficient facts from which we can determine if Pope has standing to raise this claim. The issue of Pope's standing can be raised on remand to the district court.
 We also conclude that Citizens has standing to bring suit on its own behalf, see Havens Realty Corp. v. Coleman, 455 U.S. 363, 370-71, 102 S.Ct. 1114, 1119-20, 71 L.Ed.2d 214 (1982), and on behalf of its members (surrogate standing). See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975).
 For the above reasons, we will instruct the district court to grant plaintiffs leave to amend their complaint pursuant to Fed.R.Civ.P. 15(a) to add Annie Alvin and Gloria Pope as parties.
 
 
 [10]
 55 Pa.Code Sec. 275.4(h)(1)(iv) (1987) provides, inter alia, that "[h]earing officers may not render a decision on the validity of a Departmental regulation nor may they invalidate or modify a Departmental regulation." Moreover, Sec. 275.4(h)(2)(i) provides that the "hearing officer will make his adjudication in accordance with regulations established by the Department which have been promulgated in accordance with the Commonwealth Documents Law."
 
 
 [11]
 Inasmuch as the food stamp program is federally funded, see 7 U.S.C. Sec. 2027(a), the eleventh amendment is not a bar to Cheryl Robinson attempting to obtain retroactive benefits. See Bennett v. White, 865 F.2d 1395, 1407, 1408 (3d Cir.1989)
 
 
 [12]
 We conclude that the district court correctly dismissed plaintiffs' claim that the defendants' violated their due process rights, and other statutes, by failing to send notices concerning food stamps to the head of each family within an agglomerated food stamp household. The defendants' practice of sending notices only to the heads of households is rationally related to the efficient administration of the food stamp program. See 7 U.S.C. Sec. 2013(c). We further find that the district court did not abuse its discretion in denying plaintiffs' motion for class certification. See Eisenberg v. Gagnon, 766 F.2d 770, 785 (3rd Cir.1985). Plaintiffs' proposed classes do not meet the requisite criteria of Fed.R.Civ.P. 23(a) to bring a class action suit