FUENTES, Circuit Judge.
The individual plaintiffs in this case are industrial workers who reside and worked in western Pennsylvania. Each lost his or her job as a result of foreign competition or because his or her job had been moved to another country. As a result, the workers enrolled in re-training programs through the federal Trade Adjustment Assistance Program (“TAA”) of the Trade Act of 1974. Under the Act, the workers were entitled to reimbursement for training-related travel expenses if they had to travel outside their regular commuting area. However, the Pennsylvania Department of Labor and Industry (“Labor & Industry”), the state agency that administers the federal program, required the workers to sign waivers of the travel expense allowance before they could be approved.
In April 2001, the workers filed suit against both Labor & Industry and the United States , Department of Labor (“DOL”) seeking, among other things, in-junctive relief and a declaration that they were entitled to. a retroactive reimbursement. The District Court denied all relief and dismissed the workers’ complaint.[1] We conclude that the workers are entitled to an order: (1) declaring that Pennsylvania’s waiver policy violated the Trade Act, and (2)- directing the Secretary of Labor to order the Pennsylvania Department of Lav bor & Industry to redetermine the workers’ travel expense claims.
I. Facts and Procedural Background
The Trade Act of 1974, 19 U.S.C. § 2291-98 (“Act”), provides unemployment compensation, training, job search, relocation, allowances and other benefits to workers who have lost their jobs as a result of competition from imports. The Act authorizes the Secretary of Labor to contract with state employment agencies to administer the federal benefits program. Dislocated workers can apply to DOL through the state agency for reimbursement of their training costs, including the costs of traveling to their training centers provided that the centers lie outside their normal commuting area.- 20 C.F.R. § 617.28(a). Labor & Industry administers the program in Pennsylvania as an agent of DOL. The named plaintiffs, Ronald Hampe, Joshua Jesse, Mark Vanway, Michele Aikens and John Whitcomb (“Plaintiffs”) are all dislocated workers under the Act who sought coverage for their training and travel from Labor & Indus *92 try.[2] Plaintiffs, all residing in rural areas, were enrolled in training facilities located more than 50 miles from their homes. They allege that before they could be approved for a training program, the state required anybody commuting more than 50 miles away to sign waivers agreeing to accept only $5 per day for commuting expenses. PI. Br. at 11. They further claim that Labor & Industry adopted this “negotiated travel allowance” policy as a means of reducing its training costs, and that the policy was approved by DOL. Labor & Industry and DOL, however, allege that Labor & Industry and Plaintiffs negotiated the $5 per day amount based on the mutual recognition that the commuting costs were abnormally high.
Plaintiffs filed suit in the District Court in April 2001. Five months later, DOL issued Training and Employment Guidance Letter (“TEGL”) 5-01, which clarified that states could not negotiate travel allowances under the Trade Act. Labor & Industry adopted this clarification, discarded the negotiated travel allowance policy effective November 15, 2001, and began to pay full federal mileage to individuals in training as of November 15. Labor & Industry did not, however, reimburse any of the Plaintiffs for their pre-November 15 commuting costs.
In their complaint, Plaintiffs pressed three claims. First, Plaintiffs demanded retroactive relief from Labor & Industry: namely, reimbursement for pre-November 15 commuting costs above $5 per day. Alternatively, Plaintiffs requested relief from DOL for the pre-November 15 policy on the grounds that DOL endorsed the negotiated travel allowance policy.[3] Specifically, Plaintiffs sought a declaration that “DOL’s policy of approving negotiated travel allowances prior to September 2001 violated DOL’s own regulations and, thus, the dislocated workers are entitled to relief against the Secretary under the Administrative Procedures [sic] Act[4] for the travel allowances which were withheld from them before November 15, 2001.” PI. Br. at 7. Finally, Plaintiffs sought an injunction against the current, post-November 15 one-half tuition policy, under which Labor & Industry allegedly denies any training program for which travel costs exceed more than half of training tuition and fees.
*93 The District Court dismissed all of Plaintiffs’ claims. First, the District Court found that Plaintiffs’ claim for reimbursement from Labor & Industry was barred by sovereign immunity. In particular, the District Court rejected Plaintiffs’ argument that sovereign immunity was inapplicable simply because only federal funds were at issue. The District Court then dismissed the reimbursement claim against DOL as barred by the Act because, according to the District Court, re-determinations of Act benefits can only be sought in state court. Finally, the District Court concluded that any claims for prospective relief were mooted by the November 15 adoption of TEGL 5-01. Plaintiffs timely appealed.
II. Jurisdiction and Standard of Review
The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1381. This Court has jurisdiction over the District Court’s final judgment pursuant to 28 U.S.C. § 1291. Our standard of review over the District Court’s grant of summary judgment is plenary. Morton Int’l, Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 679 (3d Cir.2003).
III. Analysis
A. The Trade Act Does Not Bar Relief Against DOL In This Case
The District Court’s dismissal of Plaintiffs’ claim against DOL was based on the grounds that the Trade Act confines claims for redeterminations of benefits to state courts. In its decision, the District Court noted that the Act “vested state courts with exclusive jurisdiction over claims challenging a state agency’s application of federal guidelines to the benefit claims of individual employees.” International Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock, 477 U.S. 274, 285, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986) (hereinafter “Brock I ”). Plaintiffs contend, however, that the federal district court has jurisdiction to hear their claims. They argue that their instant suit against DOL is not for a rede-termination of benefits, but for an order declaring that DOL improperly endorsed Labor & Industry’s negotiated travel allowance policy, which had been implemented in violation of federal law.
Plaintiffs are correct. In Brock I, the Supreme Court noted that nothing in the Act would prevent a suit against DOL for violation of federal law in federal court: “While the Act vested state courts with exclusive jurisdiction over claims challenging a state agency’s application of federal guidelines to the benefit claims of individual employees, there is no indication that Congress intended [the Act] to deprive federal district courts of subject-matter jurisdiction ... to hear statutory or constitutional challenges to the federal guidelines themselves.” In other words, even though the determination of individuals’ benefits may be confined “to state administrative and judicial processes, claims that a program is being operated in contravention of a federal statute or the Constitution can nonetheless be brought in federal court.” Id. (internal citations omitted). Specifically, a federal court can hear statutory challenges that will influence the outcomes of redetermination proceedings, although it cannot hear direct requests for redetermi-nation. Id. at 284, 106 S.Ct. 2523. The language from Brock I does not simply allow for suits seeking to invalidate statutes or explicit federal guidelines; rather, it explicitly provides for “claims that a program is being operated in contravention of a federal statute.” Id. at 285, 106 S.Ct. 2523 (internal citations omitted) (emphasis added). Thus, in this case, Plaintiffs’ claim is not barred by the fact that it *94 is not challenging the official statute or regulations. As the Supreme Court noted in Brock I, “[a]s we find [the Act] to pose no bar to petitioners’ claims, we see no jurisdictional impediment to this suit in federal court challenging a federal official’s interpretation of a federal statute. In view of the extent to which state agencies are bound to adhere to the Secretary’s directives with respect to the administration and interpretation of the Trade Act, such a direct challenge is not only proper, but appropriate.” Id. at 285-86, 106 S.Ct. 2523 (internal citation omitted).
DOL offers four arguments in an attempt to distinguish Brock I. First, DOL contends that in Brock I, the Secretary was still advocating the invalidated policy, whereas here DOL has declared in TEGL 5-01 that the pre-November 15 policy violated federal law, thereby mooting any controversy. We note, however, that Plaintiffs have not yet been reimbursed for their pre-November 15 travel costs, and so their entire request for relief has not been mooted. A directive from DOL to Labor & Industry to redetermine benefits to the extent permitted under state law is a discrete step beyond merely conceding the illegality of the pre-November 15 policy: doing the latter does not render a request for the former action moot.
Second, DOL asserts that Plaintiffs actually benefitted from the negotiated travel allowance policy because they were able to negotiate fair amounts for travel. Plaintiffs dispute this assertion, of course, and it is, in any case, irrelevant as such a factual determination must be made by the agency charged with redetermining benefits. Third, DOL notes that in Brock I, no states were joined as parties and so relief through the Secretary was the only option. This fact, however, does not distinguish Brock I from the instant case because, in light of sovereign immunity, Labor & Industry is just as inaccessible here as the state agencies were during Brock I.[5] Fourth, DOL contends that the redetermi-nation directive in Brock I was merely ancillary relief. DOL does not, however, give any reason as to why it can only be ancillary, rather than the main relief granted Plaintiffs here.
DOL raises two final points in opposition to Plaintiffs’ request for relief. First, it asserts that it cannot order Labor & Industry to redetermine benefits because Labor & Industry has already resolved that benefits cannot be redetermined under state law. This argument is unpersuasive. As Plaintiffs point out, the question of whether Pennsylvania law forecloses re-determinations has not been litigated in state court. Moreover, DOL’s doubt over whether Labor & Industry will conduct redeterminations is not enough to preclude relief. While we do not suggest that the District Court can order Labor & Industry to redetermine benefits in cases in which redetermination is barred by state law, we see no obstacle to the entry of an order similar to that approved in Brock I.
In Brock I, the Supreme Court did not suggest that the federal courts could require a redetermination of benefits in cases in which “a final state judgment ... preclude[d] further consideration of ... eligibility claims.” 477 U.S. at 284, 106 S.Ct. 2523. Instead, the Court held that certain workers who had yet to receive such a judgment had “a live interest” in challenging the Labor Department guidelines. Id. The Secretary of Labor expressed concern that state agencies, unless *95 joined as parties, would not comply with a DOL directive to redetermine benefits. Brock I, 477 U.S. at 291-92, 106 S.Ct. 2523. The Supreme Court, however, opined that it had “little doubt that the state agencies, which have agreed to administer [trade readjustment allowance] benefits as agents of the United States, would obey the Secretary’s directive to process anew any [trade readjustment allowance] claims wrongfully denied as a result of’ the erroneous policy. Id. at 292, 106 S.Ct. 2523 (internal quotations omitted). The Supreme Court stated that state agencies might even be compelled to follow the Secretary’s directive due to their agency agreement to administer the Trade Act as agents of the United States. Id.
On remand from Brock I, the Court of Appeals for the District of Columbia Circuit further considered the question of what relief is appropriate for Trade Act violations pursuant to invalid DOL policies. See generally International Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock, 816 F.2d 761, 768-69 (D.C.Cir.1987) (hereinafter “Brock II ”). The D.C. Circuit refused to compel redetermination of benefits, but it directed the district court to order the Secretary of Labor to promulgate guidelines embodying a correct interpretation of the Act and to advise state agencies of this new interpretation. Id. at 769. In addition, the court of appeals stated:
The trial court should also direct the Secretary to order agency officials to take appropriate action to enforce this correct interpretation of the statute in pending and future cases, and, consistent with state law, to correct any erroneous eligibility determinations that may have occurred as a result of his incorrect interpretation.
Id. (emphasis added). In the instant case, therefore, both Brock I and Brock II (hereafter collectively referred to as “Brock ”) would sanction orders to DOL to direct Labor & Industry to reprocess benefits in accordance with state law. Accordingly, while the District Court in this case could not hear requests for individual eligibility determinations, it did have jurisdiction to hear a challenge to DOL’s approval of Labor & Industry’s negotiated waiver policy. Under the teachings of Brock I, Plaintiffs could therefore sue for an order declaring that the pre-November 15 policy violated the Trade Act.
Finally, DOL suggests that even if the Court determines that a redetermination directive is appropriate, the Court can remand to the District Court to determine whether that is a proper declaratory/in-junctive remedy. In this case, however, we see nothing further required of the District Court: all parties agree that the pre-November 15 policy violated the Trade Act, and no party has offered a suitable alternative for relief. Accordingly, it is entirely proper for this Court to order DOL to direct Labor & Industry to redetermine benefits.
B. The One-Half Tuition Policy Does Not Violate the Trade Act
Plaintiffs next allege that Labor & Industry improperly maintains a blanket “one-half tuition policy” under which Labor & Industry denies any training program for which travel costs exceed more than half of training tuition and fees. In other words, Plaintiffs contend that the one-half tuition policy does not allow for individualized evaluations of training programs with high relative travel costs, but dismisses such programs by rote. The District Court did not discuss the allegedly blanket nature of the policy, but held that the policy conformed to the applicable DOL regulation: “Training at facilities *96 outside the worker’s normal commuting area that involves transportation or subsistence costs which add substantially to the total costs shall not be approved if other appropriate training is available.” 20 C.F.R. § 617.22(a)(6)(iii)(C) (emphasis added).
Plaintiffs argue that the District Court was in error, and that a blanket policy rejecting training programs without individualized determinations of appropriate training options violates federal law. Although we agree with Plaintiffs that the Trade Act does not allow for blanket policies, we agree with the District Court’s conclusion that the one-half tuition policy comports with the Trade Act because there is no evidence that the one-half tuition policy is a blanket policy. The Trade Act requires approval of training that “is suitable for the worker and available at a reasonable cost.” 19 .U.S.C. § 2296(a)(1)(F). The statute’s legislative history makes it clear that training programs cannot be disapproved through blanket rules, but only on a case-by-case basis. H.R. Conf. Rep. No. 100-576, at 700-01 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1733-34. The “DOL regulations implement this case-by-case approach: “Available at a reasonable cost means that training may not be approved at one provider when, all costs being considered, training substantially similar in quality, content and results can be obtained from another provider at a lower total cost within a similar time frame.” 20 C.F.R. § 617.22(a)(6)(h). Thus, Labor & Industry cannot institute a blanket denial policy, but must take each individual’s particular training request into consideration on its own merits. Just as clear, however, is the regulations’ mandate that training costs, including travel costs, be minimized without sacrificing training quality, content or results.
Here, there is no evidence that the one-half tuition policy’s attempt to control costs has come at the expense of training quality, content or results. DOL and Labor & Industry have consistently maintained that the one-half tuition policy is not a blanket policy at all, but is a rule of thumb that is susceptible to exceptions on a case-by-case basis. According to DOL and Labor & Industry, the one-half tuition policy is merely a recognition that Labor & Industry will normally be able to provide alternate suitable training for applicants who wish to enroll in programs for' which travel costs exceed more than one-half of the tuition costs. In the extreme case where that is not possible, DOL and Labor & Industry insist that the one-half tuition policy would not bar reimbursement for the chosen program.
Plaintiffs reply that Ronald Zilonka, the Labor & Industry official in charge of Trade Act allowances, admitted to the blanket nature of the policy in his deposition. A careful reading of the deposition, however, reveals no such admission. Zi-lonka explained that, normally, other available training could be found for someone whose program violated the one-half tuition policy. Zilonka Dep. at 90 (App. at 84). Zilonka was clear, however, that the one-half tuition policy did not act as a total bar to acceptance of any programs.
Q. This is just a blanket rule, it doesn’t make any difference what the tuition of the training is, if the cost of travel is more than that, you can’t get it.
A. Seeing that the transportation cost takes away from training cost [sic] of other individuals across the Commonwealth of Pennsylvania, each case is looked at on an individual basis.
But it has been our policy since 1993/1994 that any requested training where the cost of transportation rises to a point of half the cost of transporta *97 tion — or equal to the cost of transporta1tion — that every effort will be made to find other training within commuting distance.
Id. (emphasis added). Thus, Zilonka expressly repudiated opposing counsel’s statement that the one-half tuition policy is absolute, and emphasized that Labor & Industry merely does its best to find alternate training for those whose programs have high travel costs.[6] In conclusion, we find that the one-half tuition policy legitimately attempts to control costs and is in harmony with the individualized character of the Trade Act regulations. We accordingly affirm the District Court’s conclusion in this regard.
C. Plaintiffs’ Request for Reimbursement from Labor & Industry is Barred by Sovereign Immunity
As we previously noted, the District Court dismissed Plaintiffs’ request for monetary relief from Labor & Industry on the grounds that it was barred by the doctrine of sovereign immunity, which protects states from suit by individuals. See generally, e.g., Federal Maritime Comm’n v. South Carolina State Ports Auth., 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002). Plaintiffs argue that sovereign immunity does not apply here because the money that would be used to pay Plaintiffs is coming from the federal government, and therefore Plaintiffs áre not targeting any of Pennsylvania’s money. See Robinson v. Block, 869 F.2d 202, n. 11 (3d Cir.1989); Bennett v. White, 865 F.2d 1395, 1408 (3d Cir.1989). The holdings in Robinson and Bennett, however, predated the Supreme Court’s most recent round of decisions on sovereign immunity, which leaves no doubt that sovereign immunity applies even when the money at stake is from the federal rather than the state treasury. ' ■■ ■■
For example, in Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 431, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997), the Supreme Cdurt rejected the argument that sovereign immunity would not apply “because any award of damages would be paid by the Department of Energy (‘DOE’), and therefore have no impact upon the treasury of the State of California.” Plaintiffs attempt to distinguish Doe on the grounds that California had to pay damages and would then be indemnified by the DOE, whereas, in the instant case, the money would come directly from the federal treasury. This distinction, however, does, not help Plaintiffs because the Supreme Court has since made clear that the purpose of sovereign immunity is not merely to protect intrusion into the state’s treasury, but to protect against the indignity of any kind of suit whatsoever. Federal Maritime Comm’n, 535 U.S. at 765-66, 122 S.Ct. 1864. Thus, no matter who pays the reimbursement bill, sovereign immunity bars Plaintiffs from suing Labor & Industry to get that'reimbursement.
IV. Conclusion
After carefully considering the arguments discussed above, we conclude that the District Court correctly dismissed the claims against Labor & Industry, but that its dismissal of the claim for injunctive relief against DOL was in error. We therefore remand this case to the District Court for further proceedings consistent with this opinion.

. The District Court also denied a motion by Plaintiffs for class certification, based on the denial of the underlying relief. The class certification issue has not been appealed as an independent issue, so we do not discuss it here.

. There are two additional named plaintiffs: Mon Valley Unemployed Committee is an advocacy group representing unemployed or underemployed individuals, and the International Union of Electrical Salaried Machine and Furniture Workers-Communication Workers of America is Plaintiffs’ union.

. Our dissenting colleague bases his opinion on the premise that there is no evidence of any DOL approval of the negotiated travel allowance policy. The record belies this premise, however. Specifically, Ronald Zi-lonka, the Labor & Industry official in charge of Trade Act allowances, testified that DOL administrator Ronald Kile approved the negotiated allowance practice on a state-by-state basis. Zilonka Dep. at 37-38 (App. at 70-71). Moreover, Zilonka testified that he continued to send reports on Labor & Industry's use of the negotiated allowance policy to federal officials, and that the federal officials actually asked him for further data on how the policy was working. Zilonka Dep. at 38-41 (App. at 71). Although our dissenting colleague is correct that the negotiated allowance policy does not seem to have originated from the DOL, the above testimony makes it clear that the DOL knew of and condoned the negotiated travel policy, and even encouraged the policy by asking Labor & Industry to keep the DOL apprised of its progress. Notably, neither the DOL nor Labor & Industry contests this, nor does any record evidence refute the DOL’s clear tacit approval of the negotiated travel policy.

.Plaintiffs invoke the APA as a procedural mechanism to challenge DOL's actions, see 5. U.S.C. § 702. Plaintiffs' specific substantive challenge is that DOL has contravened its own regulations and the dictates of the Act.

. The conclusion that Labor & Industry is immune from suit shall be discussed at greater length in Part C of this opinion.

. Plaintiffs also claim that Hampe was refused his choice of training program and not presented a suitable alternative. Plaintiffs present no evidence, however, to support this allegation.