**STATE OF NEW JERSEY DEPARTMENT OF HUMAN SERVICES, etc., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. No. 89–1585 (AET).**

United States District Court, D. New Jersey.

July 2, 1990.

Petter N. Perretti, Jr., Atty. Gen., Michael J. Haas, Deputy Atty. Gen., Trenton, N.J., for plaintiff.

Sheila Lieber, Carole Jeandheur, U.S. Dept. of Justice, Washington, D.C., for defendants.

OPINION

ANNE E. THOMPSON, District Judge.

Defendant, United States of America, has made the instant motion for reargument of this court's denial of defendant's motion for judgment on the pleadings. Because this case is complex and raises new issues of law, the court has decided to entertain defendant's motion. As this court has issued a recent ruling in this matter, it is not necessary to review the facts of the case in detail. *See* Decision of December 7, 1989.

The underlying action was brought by the State of New Jersey Department of Human Services, Division of Public Welfare to challenge the imposition of a $1,088,471 penalty assessed against the State for excessive errors in its administration of the Food Stamp Program in federal fiscal year 1984. This court denied defendant's previous motion to dismiss on the grounds that the relevant statutory and regulatory scheme did not require the State of New Jersey to exhaust its administrative

remedies prior to filing an action in the federal district court. The court further held that the principles of equitable tolling applied and that the State of New Jersey filed suit in the district court within the applicable limitations period.

■ Defendant raises two arguments in support of its current motion. First, the Government asserts that because the same statutory provision applies to both stores and states, it was incorrect for this court to find that the relevant regulations required stores to exhaust their administrative remedies prior to filing suit in district court, but not find that the same requirement applied to states.

The Government argues that because a court may exercise jurisdiction over the United States only with the consent of Congress (pursuant to the doctrine of sovereign immunity), *Block v. North Dakota,* 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), any jurisdictional requirements placed on access to judicial review must come from Congress and cannot be altered by agency regulations. As such, the Government contends that it is inherently incorrect for this court to rely on agency regulations, which take their authority from the same statutory sentence, to require judicial review for one entity and not another. The Government further argues that exhaustion either is required prior to judicial review for both states and stores or it is required for neither (and in this case it is required for both) because agency regulations do not have the power to alter a federal court's jurisdiction over food stamp cases.

The Government is correct in its assertion that it is up to Congress to determine those circumstances under which a federal court may exercise jurisdiction over the United States. However, while there is logic to the Government's position that one would expect consistency in the regulatory interpretation of the statute, this is not the concern currently before the court. Further, to the extent stores and states should

be treated similarly in the regulations, this court is not in a position to determine whether Congress intended exhaustion to be mandated in neither context or in both.

Rather, this court is concerned with whether it must dismiss this matter because the *State* of New Jersey failed to exhaust its administrative remedies (and now no longer can do so) prior to seeking judicial review. There are a number of factors for this court to consider. First, the court notes that there exists strong public policy in favor of judicial review. Second, while public policy often favors exhaustion, exhaustion is not mandated each time an administrative process is available. The doctrine of exhaustion "enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy." *Commonwealth of Massachusetts v. Lyng,* to be reported at 893 F.2d 424, 429 (1st Cir.1990). However, absent a statutory mandate,[1] a "court is free to use its discretion, applying the doctrine, or not, in accordance with its purposes." *Id.* at 427 (citations omitted). Therefore, for example, when a federal court is confronted with a legal issue (rather than a complex factual issue) on appeal, the policies supporting the doctrine of exhaustion become less compelling. *See e.g., Lyng, supra; Robinson v. Block,* 869 F.2d 202 (3d Cir.1989). Although this court has been faced solely with procedural questions in this matter so far, the nature of the State's complaint indicates that the court will be called upon to deal primarily with a legal question, rather than a factual dispute.

It also is incumbent upon the court to review relevant case law. As noted in this court's prior opinion in this matter, there exists a paucity of case law in this area. However, when a recent First Circuit court reviewed a similar matter it held that, "contrary to FNS' assertion, the scheme of the food stamp statute does not require ex-

---

1. Compare the statute at hand with the Title VII statute, which specifically provides that administrative remedies must be exhausted before a claimant can pursue a claim in federal court. 42 U.S.C. § 2000e *et seq.*

haustion. Section 2023(a) of the Act outlines the procedure for judicial review of specific administrative decisions taken in relation to a state agency (or a retail or wholesale food concern)." *Id.* The controversy in *Lyng* was before the court because the state had interrupted the administrative process in order to pursue a declaratory judgment concerning interpretation of the federal enabling statute. *Id. See also, State of Colorado v. United States*, No. 87–Z–865 (D.Colo. Oral Decision of November 7, 1988) (The federal court, on parallel facts to the instant case, denied defendant's motion to dismiss on the grounds that the presumption of judicial review required the court to look carefully at the statute, and, that the statute did not require exhaustion of administrative remedies prior to obtaining judicial review.); *Reason v. Heslin*, 723 F.Supp. 1309 (S.D. Ind.1989) (Plaintiffs sought judicial review directly from the FNS review of the penalty assessment; the court addressed defendant's motion to dismiss for failure to timely file for judicial review without noting that an exhaustion issue may be present.)

Finally, the court would be remiss if it did not discuss the relevant statutory language itself. The statute provides that, "[i]f the store, concern, or State agency feels aggrieved by such final determination, it may obtain judicial review thereof...." 7 U.S.C. § 2023. An examination of the statute does not reveal any clear statement that a state must exhaust its administrative appeals prior to seeking judicial review.

The court also may examine the relevant regulations to inform its decision. The regulations provide that a State agency "may obtain judicial review and trial *de novo* by filing a complaint against the United States within 30 days after the date of delivery of the final determination, requesting the court to set aside the final determination."

7 C.F.R. 276.7(j). Absent from this regulation is any indication that exhaustion is a prerequisite to seeking judicial review. It appears that the only regulatory prerequisite with which a state must comply is the filing of a complaint in the district court "within 30 days after the date of delivery of the final determination." [2]

A review of all of the necessary factors—the language of the statute, the relevant regulation, the policy in favor of judicial review, relevant case law, and the policies supporting exhaustion—the court once again finds it appropriate to hold that the State of New Jersey did not have to exhaust the available administrative procedures prior to filing its complaint in federal court. Therefore, the court now must turn to the remaining objection of the Government to this court's prior holding in this matter.

■ The Government argues that even if exhaustion is not mandated, the State of New Jersey missed the 30–day period for filing for judicial review. 7 U.S.C. § 2023(a). Prior to exploring the Government's argument, the court first must set forth the dates in question. On February 4, *1989*, the State received notice of the denial of a waiver request which had been submitted to the Food and Nutrition Service ["FNS"] on April 10, *1986*. The State requested appellate review of the FNS determination by the Food Stamp Appeals Board ["FSAB"] by letter apparently postmarked February 15, 1989. By letter dated March 1, 1989, and apparently received by the State on March 6, 1989, the State was informed that the FSAB would not review the State's appeal because it was not filed in a timely manner. The State filed this lawsuit seeking judicial review of the sanction on April 5, 1989.

In its prior consideration of this matter this court held that although the FNS de-

---

**2.** The regulation setting forth the availability of judicial review for stores provides that, "[t]he determination of the FNS regional office shall be final and not subject to further administrative or judicial review unless a written request for review is filed within the [10 day] period...." 7 C.F.R. § 278.6(i). This regulation specifically provides that judicial review is not available "*unless* a written request for review is

filed within the [10 day] period." Without making a judgment as to the appropriate procedures which must be adhered to by stores, for this is not the matter before us, the contrast in regulatory language applicable to stores and to states reveals that exhaustion and other requirements can be incorporated without hardship into statutes and regulations.

termination "was the 'final determination' of the administrative agency, the 30–day clock did not begin to run until March 6, 1989, the date the State was notified that the FSAB would not consider its appeal because it was not timely filed.... [I]t appears as if the state had a good faith and reasonable perception that the appeal was being considered; as such, the 30–day period must be considered to be 'equitably tolled' until the date the decision of the FSAB was rendered." Decision of December 6, 1989 at 7 (citing *Colorado, supra*). Based on this reasoning, the court found that the 30–day period commenced running following receipt of the March 1, 1989 decision, and that as such, the State's complaint was filed in a timely manner on April 5, 1989.

The Government raises two issues concerning the court's prior decision. First, it argues that equitable tolling should not apply because the Government did not "lull" the plaintiff into non-action. Second, the Government contends that even if equitable tolling applies, the tolling merely would suspend the running of the 30–day period, not start it over upon receipt of the determination from the FSAB; rather, the tolling would commence only upon the State's filing its appeal with the FSAB and would end upon receipt of the decision of the Board.

The Government concedes that under this theory the tolling can be calculated in two different ways; yet, the Government asserts that both of these calculations require the court to conclude that the State filed for judicial review in an untimely manner. Specifically, the Government contends that the 30–day period commenced running on February 4, 1989, the date the State received notice of the denial of its waiver request from the FNS. The period would then be tolled from February 15, 1989—the date the State filed its appeal with the FSAB—until March 6, 1989—the date the State received a response from the FSAB. As 11 days already would have run from February 4th through February 15th, the State would have 19 days remaining to file for judicial review. Because the 19th day was a Saturday, the Government acknowledges that the State would have had

until March 27, 1989 to file its complaint in federal court.

In the alternative, the Government allows that the FNS decision may not be considered "final" until the 10–day period in which to file an appeal actually ran, that date being February 14, 1989. Under this scenario, one day of the 30–day period would have run from February 14th until February 15th, when the tolling would have taken effect upon the State's having filed its appeal with the FSAB. This would allow the State 29 days from the date the period began to run again on March 6, 1989 to file its complaint; that date would be April 4, 1989. Under either proposed calculation, the Government asserts that the State would have missed the filing deadline—in the first case by eight days and in the latter case by one day. As such, the Government asserts that the State's complaint should be dismissed as being untimely filed.

The State of New Jersey asserts that because it is a well-settled principle of administrative law that a request for administrative reconsideration renders the administrative action complained of "nonfinal," the limitations period for seeking judicial review does not begin to run until the administrative agency makes a determination on the request for reconsideration. As such, the State argues that its complaint was timely filed on April 5, 1989, thirty days from the date it received the decision of the FSAB.

A review of the relevant cases reveals that the State's argument is accurate so long as the request for reconsideration is filed in a timely manner. *See e.g., V.I. Conservation Society v. Board of Land Use Appeals*, 881 F.2d 28 (3d Cir.1989) ("[A] pending petition for agency reconsideration, timely filed [i.e., within the time period during which a party may petition for judicial review], renders the underlying agency action nonfinal and thus nonreviewable with respect to the filing party. Thus, the statute of limitations for judicial review is tolled until the agency decides the petition for reconsideration." *Id.* at 31.); *Arch Mineral Corp. v. Office of Workers' Compensation Programs*, 798 F.2d 215 (7th Cir.1986) ("A clear majority of cases involv-

ing appellate review of administrative decisions hold that, where the applicable statute and administrative regulations are silent, the filing of a motion for reconsideration suspends the time for filing a petition for review." *Id.* at 218 (citations omitted) (emphasis added)).

In cases in which the petition for reconsideration was filed in a timely manner, the petition for judicial review also was deemed timely if filed in time from the date on which the [agency] disposed of pending petitions for reconsideration. *See Civil Aeronautics Board v. Delta Air Lines,* 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1960) (There exists a "general notion that an administrative order is not 'final,' *for the purposes of judicial review,* until outstanding petitions for reconsideration have been disposed of." *Id.* at 326, 81 S.Ct. at 1619. (emphasis in original); *Outland v. Civil Aeronautics Board,* 284 F.2d 224, 228 (D.C.Cir.1960). *See also, Nordell v. Heckler,* 749 F.2d 47, 48 (D.C.Cir.1984) ("[A] request for reconsideration of an EEOC opinion, if filed within the time for bringing suit under Title VII, renders the initial decision no longer 'final action' and hence extends the deadline for filing a civil action until thirty days following final disposition of the request." *Id.* at 48.) Therefore, in the instant case, had the State filed timely for administrative review there hardly would be a question but that it had filed for judicial review in a timely manner (i.e., thirty days from receipt of the decision of the FSAB).

Although some cases define "timely manner" as the time within which a party can seek judicial review, courts appear to use this definition when no other statutory or regulatory time limit is provided for seeking administrative reconsideration. *See V.I. Conservation Society, supra.* In the instant case, the statute provides that any administrative review must be requested within 10 days of receipt of the agency's decision. 7 U.S.C. § 2023. To adopt in the instant case the definition of "timely filed" from the holding of the *V.I. Conservation Society* would "read out" of the statute the 10–day filing period for administrative review. (Cf. *Nordell, supra* ("Since the EEOC has not limited the time for employ-

ees to seek reopening, we think it most sensible to deem such requests timely for these purposes if they are filed within the thirty days allowed by statute for filing a civil action." *Id.* at 49 (citations omitted).). As such, the court cannot accept this proposal.

Therefore, the court must examine whether any other grounds exist that would render the agency's decision non-final or that would allow this court otherwise to retain jurisdiction over this case. This court, *sua sponte,* has considered whether the agency's decision could be considered final for the purpose of allowing this court to consider the merits of the case, but nonfinal for the purposes of determining the timing of filing of the petition before the court. However, the Third Circuit recently decided this question in the negative when it was faced with an analogous situation that arose under the provisions of the Clean Air Act, 42 U.S.C. § 7607(b)(1) (1982). *West Penn Power Co. v. U.S. E.P.A.,* 860 F.2d 581 (3d Cir.1988). In *West Penn* the court specifically held that "[f]inality for purposes of entitlement to judicial review should mean the same thing that finality means for purposes of triggering the time limit for appeal." *Id.* at 587. The statutory constructs of the Clean Air Act and the statute in question are different; however, this court is sufficiently persuaded that the holding of the *West Penn* court is applicable to the instant case and that the court must consider the decision of the agency rendered on February 4, 1989 to be the final decision for purposes of determining jurisdiction as well as of determining timeliness of filing.

Finally, the court notes that the two District Courts that have confronted similar facts have reached different conclusions. In the *Colorado* case, discussed *supra* and in this court's prior opinion, the plaintiff, the State of Colorado, had been assessed a penalty much as the State of New Jersey has been in the instant case. Colorado also failed to meet its filing deadlines. The court in that case held that because the State had a good faith and reasonable perception that its appeal was being considered, the 30–day period had to be considered "equitably tolled" until the date the

**1072**

decision of the FSAB was rendered. The *Reason* case, referred to *supra*, is more factually distinguishable from the instant case. In *Reason* the plaintiffs were store owners and they had not filed for review with the FSAB; rather, they filed directly for judicial review, but did so two days late. The *Reason* court held that the "thirty day deadline for judicial review is not a statute of limitations that may be equitably tolled, but is the very basis of Congress' grant of jurisdiction to parties suing the United States in this court." *Id.* at 1311. Because the plaintiffs did not file timely for judicial review, the *Reason* court dismissed the case for lack of subject matter jurisdiction. *Id.* at 1312.

The court has reviewed thoroughly the case law and other authorities presented to it. It is clear that if the State had filed its petition for review in a timely manner with the agency that the 30–day period for filing for judicial review would have been stayed until the agency rendered its decision. Therefore, as noted previously, the question before the court is whether the court can allow the tolling provision to be implemented when the State filed for review with the FSAB one day late.

The court concludes that it must rescind its prior holding on this issue. A closer examination of the relevant case law has revealed to the court, that despite public policy favoring judicial review of administrative decisions, there exists no basis for the court to retain jurisdiction of this matter. An examination of the relevant statute and regulation reveals that the 10–day period in which to file for agency review is jurisdictional. *See* 7 U.S.C. § 2023; 7 C.F.R. § 276.7(c). This indicates to the court that the State was on notice that it *had* to file its request for review by the FSAB within 10 days of receipt of the decision of the FNS. As such, because the State did not file a timely appeal with the FSAB, the 30–day period must be deemed to run from February 4, 1989, or at the latest, from February 14, 1989, the date at which the FNS decision would be deemed final for failure to file a timely appeal. The State filed its complaint in federal court on April 5, 1989, well-beyond the 30–day period.

In addition, the court can find no basis on which to toll the running of time from February 4, 1989 until March 6, 1989, the date State received the FSAB's decision that it did not have jurisdiction over the instant matter. Further, even if the State were to get the benefit of the clock's stopping by either method presented by the Government, neither method would serve to buy the State sufficient time such that this court could hold that the State had filed for judicial review in a timely manner. Therefore, for the reasons outlined throughout this court's opinion, the court will grant the Government's motion to dismiss for lack of jurisdiction.