In re MECHEM FINANCIAL, INC., Debtor.

**Robert G. DWYER, Trustee, Plaintiff,**

v.

**The MARYLAND INSURANCE GROUP and Northern Insurance Company of New York, Defendants.**

Bankruptcy No. 90–00913.
Adv. No. 93–1121.

United States Bankruptcy Court, W.D. Pennsylvania.

June 1, 1994.

See also 152 B.R. 57.

John O. Dodick, Erie, PA, for trustee.

Robert F. McCabe, Pittsburgh, PA, for defendants.

## OPINION

WARREN W. BENTZ, Chief Judge.

### Introduction

On March 23, 1990, Mechem Financial, Inc. ("Mechem") filed a voluntary Petition under Chapter 11 of the Bankruptcy Code. On that same day, Robert G. Dwyer, Esq. was appointed as Chapter 11 Trustee. The case was subsequently converted to Chapter 7 and Robert G. Dwyer, Esq. ("Trustee") presently serves as the Chapter 7 Trustee.

Northern Insurance Company of New York ("Northern Insurance") is a subsidiary of the Maryland Insurance Group. Northern Insurance issued an insurance policy to Mechem for the period from December 14, 1987 through December 14, 1988 (the "Policy"). The Policy provided Mechem various types of insurance coverage including fidelity coverage for employee dishonesty.

The within Complaint seeks a judgment against Northern Insurance in the amount of $200,000 representing the policy limit of insurance for employee dishonesty for the fraudulent removal of funds by John R. Copple ("Copple") as an employee of Mechem during the Policy period.

Presently before the Court is a Motion for Summary Judgment filed by Northern Insurance. The Trustee opposes the Motion.

### Factual Background

In deciding a motion for summary judgment, we consider the facts and reasonable

inferences therefrom in a light most favorable to the party opposing the motion.

Copple was the president, majority shareholder and a director of Mechem. Copple's brother, Charles R. Copple, served as vice president. The directors of Mechem as of December 14, 1987 were Copple, Charles R. Copple, and Gustave McGeorge.

Mechem was engaged in investing money collected by funeral directors for pre-paid funerals. Mechem received large amounts of money from various funeral directors for investment. Copple diverted money for use for his own personal benefit by drawing checks on Mechem's bank account to "cash." This practice began in 1986 and continued until the fraud was discovered by the Trustee and Copple was charged criminally.

On December 14, 1987, Northern Insurance issued the Policy which included an endorsement for coverage against dishonest employees. At that time, Copple had already written a substantial amount of Mechem's checks to "cash."

At least as early as April 13, 1990, the Trustee was aware that Copple may have wrongfully diverted funds of Mechem to his own use. Notice of that fraudulent and dishonest conduct was given to Northern Insurance on February 25, 1991.[1] Neither Mechem nor the Trustee have filed a "Proof of Loss." The within Adversary Proceeding was filed on February 3, 1993.

### Issues

Northern Insurance asserts that Summary Judgment is appropriate and that the Complaint must be dismissed based on the following issues:

1. Whether Copple, being the president, majority stockholder and a director of Mechem was a covered employee within the meaning of the Policy.

2. Whether coverage was terminated as to Copple by reason of Mechem's knowledge of Copple's fraudulent and dishonest actions before the Policy was written.

3. Whether coverage must be denied because Mechem's and the Trustee's failure to give Northern Insurance notice of the loss as soon as practicable after discovery, a condition precedent to recovery.

4. Whether coverage must be denied because Mechem and the Trustee failed to file a "Proof of Loss," a condition precedent to recovery.

5. Whether coverage must be denied because Mechem and the Trustee failed to file suit within two years after the discovery of the loss, a condition precedent to recovery.

### Discussion

*I. Whether Copple as president, majority stockholder and a director of Mechem was a covered employee within the meaning of the Policy.*

The term "Employee" is defined in the Policy as:

any natural person (except a director or trustee of the insured, if a corporation, who is not also an officer or employee thereof in some other capacity) while in the regular service of the insured in the ordinary course of the insured's business during the Effective Period of this endorsement and whom the insured compensates by salary, wages or commissions and has the right to govern and direct in the performance of such service, but does not mean any broker, factor, commission merchant, consignee, contractor or other agent or representative of the same general character.

Northern Insurance asserts that Mechem did not have "the right to govern and direct [Copple] in the performance of [his] service," and as such, Copple does not meet the definition of an employee and, therefore, Mechem has no coverage for his defalcations. Northern Insurance posits that because Copple "ran the corporation," he could not have been governed or directed by Mechem.

The Trustee asserts that summary judgment on this issue is precluded because the definition of "Employee" in the Policy is subject to different meanings and is vague and ambiguous.

---

1. This is the date on which the Trustee claims Northern Insurance received notice. Northern Insurance asserts a later date.

■ "Where the intention of the parties as to who are employees is expressed in a fidelity policy, that intention will be given effect." *Bird v. Centennial Ins. Co.,* 11 F.3d 228 (1st Cir.1993). As in *Bird,* Mechem and Northern Insurance agreed that only those natural persons "whom the insured ... has the right to govern and direct in the performance of [their] service" would be "employees" covered by the Policy.

Numerous cases have treated this very definition as unambiguous. *Bird* at 233–34 (and cases cited therein). We, too, find that the language is unambiguous, and, thus, if Copple was not subject to governance and direction by Mechem, he was not an employee as that term is defined in the Policy.

We find, however, that we are unable to grant summary judgment on this issue as the record does not clearly reveal that Copple was not subject to governance and direction by Mechem.

Where the dishonesty which causes the loss is that of a person who is the only officer, director and shareholder, the cases uniformly hold that there is no coverage. *Bird v. Centennial Ins. Co.,* 11 F.3d 228 (1st Cir.1993); *In re California Hospitality Ltd., Union Ins. Co. v. American Diversified Savings Bank,* 948 F.2d 556 (9th Cir.1991) (principal officers and directors not covered); *Three Garden Village Ltd. Partnership v. United States Fidelity & Guaranty Co.,* 318 Md. 98, 567 A.2d 85 (1989); *Employer's Admin. Services Inc. v. Hartford Accident & Indemnity Co.,* 147 Ariz. 202, 709 P.2d 559 (Ariz.App.1985).

Here, although Copple owned a majority of the stock of Mechem, accepting the allegations of the Trustee as true, Copple was not the sole officer and there was a board of directors consisting of three persons. It may be that the evidence will show that control exercised by the non-fraudulent parties (the other officer and directors of Mechem) is sufficient to satisfy the Policy definition. *See Bird v. Centennial Ins. Co.,* 11 F.3d 228 (1st Cir.1993) (actual circumstances govern over theoretical circumstances). Accordingly, summary judgment on this issue must be refused.

II. *Whether coverage was terminated as to Copple by reason of Mechem's knowledge of Copple's fraudulent and dishonest actions before the Policy was written.*

■ Section 15 of the Policy provides:
Section 15. Insuring Agreement 1A or 1B shall be deemed canceled as to any Employee: (a) immediately upon discovery by the insured, or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee ...

Northern Insurance asserts that the Policy does not apply due to Mechem's imputed knowledge of fraudulent dishonest actions undertaken by Copple before the Policy was issued.

In *Gordon v. Continental Casualty Co.,* 319 Pa. 555, 181 A. 574 (1935), the chief executive and managing officer of a bank falsely represented in an application for fidelity insurance that no losses had been sustained. At the time the application was prepared, he knew that he was guilty of embezzlement. The court found that knowledge of the corporate officer was imputed to the corporation and his fraudulent representations to the insurance carrier vitiated the insurance coverage. *Id.*

In *United States Fidelity and Guaranty Co. v. State of Oklahoma,* 383 F.2d 417 (10th Cir., 1967), a bank president prepared an application for a renewal bond covering employee dishonesty. Based on the application, the insurance company issued bonds for the coverage. The president subsequently admitted responsibility for losses sustained by the bank. The insurance company defended the claim on the basis of a clause in the application stating that to the knowledge of the bank, all employees had performed their duties honestly. The insurance company also alleged that the knowledge of the president in preparing the application was imputed to the bank. The court stated:
While the argument may be advanced successfully under other circumstances, *see Maryland Casualty Co. v. Queenan,* 89 F.2d 155 (10th Cir.1937), it has no application to the facts of this case. Both bond

applications signed by Lee as president of the bank contained a specific clause stating that knowledge by the signatory officer of his own personal acts or conduct and unknown to the bank would not be imputed to it. It should be noted that the clause makes no mention of any exception pertaining to sole representatives. See note 1 supra. This clause, without more, takes the case beyond the scope of the principles contended for by the company. When Lee signed the bond application, he alone knew of his embezzlement. Further, only he had engaged in the misappropriation of the funds for which the bank now seeks indemnification. In addition, the application was a form drafted by the bonding company. The company expressly contracted away the defense it now seeks to assert.

*Id.* at 420.

The application which was prepared for the Policy in question provides as follows:

The Employees of the Applicant have all, to the best of the Applicant's knowledge and belief, while in the service of the Applicant always performed their respective duties honestly. There has never come to its notice or knowledge any information which in the judgment of the Applicant indicates that any of the said Employees are dishonest. Such knowledge as any officer signing for the Applicant may now have in respect to his own personal acts or conduct, unknown to the Applicant, is not imputable to the Applicant.

The Trustee asserts that, based on the express language of the application, Copple's knowledge as an officer of Mechem preparing the application is not imputed to Mechem without Mechem's express knowledge.

The problem with the Trustee's position is that the application is signed by a representative of Northern Insurance, but is not signed by Copple or any representative of the applicant, Mechem.

Had Copple signed the application, his knowledge of his own wrongdoing would not be imputed to Mechem. We do not believe the absence of Copple's signature is fatal to the Trustee's position in the absence of evidence as to *inter alia,* who completed the application, who provided the information to complete the application, and evidence of the

reasons why the representative of Northern Insurance signed the application and a representative of Mechem did not. The language of the application shows an intent that the knowledge of the individual who provides the information for the application will not be imputed to the insured.

Accordingly, summary judgment on this issue must be refused.

*III. Notice of Loss.*

■ Section 8 of the Policy provides:

LOSS; NOTICE; PROOF; ACTION AGAINST COMPANY

Section 8. Upon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss, the insured shall: (a) give notice thereof as soon as practicable to the Company or any of its authorized agents and, except under Insuring Agreements 1A or 1B, and V, also to the police if the loss is due to a violation of law; (b) file detailed proof of loss, duly sworn to, with the Company within four months after the discovery of loss . . .

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this endorsement nor until ninety days after the required proofs of loss have been filed with the Company, nor at all unless commenced within two years from the date when the insured discovers the loss.

Northern Insurance asserts that it has no obligation under the Policy as a result of Mechem and the Trustee's failure to give notice of loss as soon as practicable. In support of its Motion for Summary Judgment, Northern Insurance cites *Utica Mutual Ins. Co. v. Fireman's Fund Ins. Cos.,* 748 F.2d 118 (2d Cir.1984). In that case, decided under the provisions of New York law, the court held that "[c]ompliance with the notice requirements set forth in an insurance contract is a condition precedent to recovery under New York law, and the failure by the insured to comply with such requirement relieves the insurer of liability." *Id.* at 121.

■ The issues presented by the within case must be interpreted under Pennsylvania

law. Under Pennsylvania law, the insurance company will be relieved of its responsibilities under an insurance policy only if it can prove actual prejudice resulting from a late notice by the insured of a potential claim. *Trustees of University of Pa. v. Lexington Ins. Co.,* 815 F.2d 890, 896 (3d Cir.1987); *In re Lloyd Securities, Inc.,* 153 B.R. 677, 683 (ED Pa.1993); *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193 (1977); *Strickler v. Huffine,* 421 Pa.Super. 463, 618 A.2d 430 (Pa.Super.1992) *appeal denied,* 637 A.2d 290 (Pa., 1993).

There is nothing in the record to indicate any prejudice to Northern Insurance from any delay in its receipt of notice of a potential loss. Accordingly, summary judgment on this issue must be refused.

### IV. Proof of Loss.

Northern Insurance next asserts that coverage under the Policy must be denied because Mechem and the Trustee failed to file a formal proof of loss.

■ We view the purpose of the Notice of Loss and a formal Proof of Loss as the same—the avoidance of prejudice to an insurer in handling a claim due to lapse of time. As with a late Notice of Loss, the insurance company must show prejudice from the absence of a formal Proof of Loss before obtaining exoneration of liability.

Summary judgment on this issue must be refused.

### V. Failure to File Suit.

■ The Trustee filed the within Complaint on February 3, 1993. The Policy requires that suit be brought within two years of the discovery of the loss by the insured. At the latest, the Trustee knew of the loss in April, 1990 when he filed an Adversary Proceeding against Copple to recover the money Copple had wrongfully taken from Mechem. Northern Insurance asserts that since suit was not brought within two years, the within case must be dismissed. The Trustee asserts that Northern Insurance caused the failure to comply with the two year limitation provision by failing to respond to the Trustee's numerous requests and by providing a certified copy of the Policy which did not contain the limitation provision. According-

ly, it is the Trustee's position that the conduct of Northern Insurance constitutes a waiver of the limitation provision and/or estops it from relying upon the limitation provision of the Policy.

In *Hospital Support Services, Ltd. v. Kemper Group, Inc.,* 889 F.2d 1311 (3d Cir.1989), the Court of Appeals for the Third Circuit concluded that the rationale of *Brakeman* which requires that an insurer show prejudice as to notice of loss and proof of loss provisions does not extend to a limitation of suit clause. The Court did specifically note that "the limitation of clause must be enforced so long as the insurer has not caused the failure to bring a timely suit to compel payment of a claim." *Hospital Support Services* at 1315.

In this regard, the Trustee alleges the following facts:

On March 23, 1990, Mechem filed a Petition for Relief with the Bankruptcy Court. On the same date, the United States Trustee appointed Robert G. Dwyer to act as a Chapter 11 Trustee. During the Trustee's investigation, it was discovered that the amount of money attributable to the purchase of rare coins and other investments was not in existence. The Trustee filed a motion with the Court on April 13, 1990 requesting conversion of the case from Chapter 11 to Chapter 7. The case was subsequently transferred to a Chapter 7 and the Trustee brought adversary proceedings against Copple, his wife and other parties to recoup money which had been transferred from the corporation. Some time prior to February of 1991, a representative of the Trustee was provided with certain documents which were purported to be binders of insurance. These documents [included] a document entitled Insurance Binder from the Maryland Casualty Company [Northern Insurance] ... [A] letter [was] sent on behalf of the Trustee to ... the Maryland Insurance Company [Northern Insurance] ... The initial letter forwarded to the Maryland Casualty Company [Northern Insurance] was dated February 4, 1991. This letter requested confirmation of the actual existence of the policy.

. . . . .

With regard to the letter of February 4, 1991 addressed to Maryland Casualty Company [Northern Insurance], a representative of the Trustee was contacted by Mr. Bob Gaetano on February 25, 1991. At that time, Mr. Gaetano acknowledged that the policy which had been forwarded under letter of February 4, 1991 was in fact a valid policy of insurance issued to Mechem. During this conversation, Mr. Gaetano was apprised of the Trustee's claim and of the fact that Copple was using money from the corporate accounts of Mechem. At this time, Mr. Gaetano indicated that he would forward documentation on the policy. By letter dated March 20, 1991, a representative of the Trustee contacted Mr. Gaetano indicating that they did not receive any of the documentation which was discussed during the telephone conversation for purposes of initiating a claim. A follow-up letter was sent by a representative of the Trustee to Mr. Gaetano on July 25, 1991. Once again, this letter requested that documents be forwarded to the Trustee for initiation of a claim in connection with the policy of insurance is-sued to Mechem.

On November 4, 1991, a letter was forwarded by a representative of the Trustee to Mr. Gaetano enclosing a Bankruptcy Subpoena, together with a Notice of Taking Deposition. The deposition notice requested that the deponent produce for inspection and copying "any and all documents, correspondence, policies or other information which you may have relating to insurance coverage available to Mechem." The letter of November 4, 1991 forwarding the Notice of Taking Deposition was followed by a subsequent letter of November 8, 1991 which amended the deposition notice for the purpose of changing the location of the deposition. A day before the scheduled date of the deposition, Mr. Gaetano contacted the office of the Trustee to advise that he would be unable to appear at the deposition.

On January 10, 1992, a representative of the Trustee again wrote to Mr. Gaetano outlining all previous contacts and requests which were made for documentation on the policy of insurance. Finally, by letter dated February 4, 1992, Mr. Gaetano contact-ed a representative of the Trustee and provided what was described as "a complete copy of all applicable coverage parts on this policy." In response to this letter, a representative of the Trustee wrote to Mr. Gaetano by letter dated February 14, 1992. In this correspondence, various documentation from the Bankruptcy Court was forwarded to the attention of Mr. Gaetano. Once again, a request was made for a complete copy of the policy. This repeated request was now almost one year after the initial contact with the Maryland Casualty Company [Northern Insurance] requesting information on the policy in question.

On May 13, 1992, a representative of the Trustee contacted Mr. Gaetano. Once again, this documentation reiterated the several different contacts which had been made with Mr. Gaetano with regard to pursuing a claim on behalf of Mechem. This letter further documented in writing the fact that the president of Mechem was under Federal indictment and indicated that whatever documentation was necessary to confirm the existence of a claim would be forwarded to Mr. Gaetano upon his request. Finally, a letter dated June 2, 1992 was written by Mr. Gaetano to a representative of the Trustee purportedly enclosing a certified copy of the policy. In fact, pages 3, 4 and 5 of MP 04 05 were not included. (See letter from Sharon Chup and letter to Mr. Gaetano.) The June 2 letter advised that no documentation had been received which would indicate that a loss had occurred under the policy. No specific mention was made of the documentation previously forwarded.

On September 29, 1992, a representative of the Trustee wrote to Mr. Gaetano advising him that on September 21, 1992, Copple was found guilty of 34 counts of mail fraud and three counts of income tax evasion. In addition, this letter indicated that a representative of the company had testified at trial and had made reference to an exclusion of coverage for any officers or directors of the corporation. Mr. Gaetano was advised that this particular exclusion was not included in the material which had previously been forwarded and requested copies of any additional endorsements

which would reference the recovery exclusion. The witness who had testified at trial was Ms. Sharon A. Chup, Branch Manager of the Maryland Insurance Group [Northern Insurance]. Contact was made with Ms. Chup, at which time she was notified that various pages of the policy endorsement which she had been referring to had never been received. By letter dated October 6, 1992, Sharon A. Chup forwarded a representative of the Trustee a complete copy of MP 04 50 (Ed. 12/79) which consisted of five pages. Previously, only pages one and two of this document had been received. These sections specifically referenced by the defendant in its Motion for Summary Judgment and Brief in Section 15, definition of employee, and Section 8 were all contained in pages 3–5 of form MP 04 50 which had not been provided to the Trustee until Ms. Chup's letter of October 6, 1992.

On November 23, 1992, the Trustee commenced a trial against Copple and his wife under Adversary Proceedings 90–0055E, 0056E, 0057E and 0064E. On November 25, 1992, the Bankruptcy Court entered a judgment in favor of the Trustee and against Copple in the amount of $4,900,-000.00 and jointly against Copple and Mary M. Copple in the amount of $1,307,-567.00. On February 3, 1993, the Trustee commenced an action against the Maryland Insurance Group [Northern Insurance] for recovery of property of the estate under Policy SMP19338680.

Trustee's Brief in Opposition to Defendant's Motion for Summary Judgment, p. 1–6.

Those facts, if proven at trial, may be sufficient for the court to make a finding that Northern Insurance "caused the failure to bring a timely suit to compel payment of a claim." Accordingly, summary judgment on this issue must be refused.

### Conclusion

The DEFENDANT'S MOTION FOR SUMMARY JUDGMENT will be refused. Appropriate Orders will be entered.