**RESOLUTION TRUST CORPORATION, in its capacity as Receiver of United Savings Bank, F.S.B., Plaintiff,**

v.

**Donald J. MOSKOWITZ, et al., Defendants.**

**Civ. A. No. 93–2080.**

United States District Court, D. New Jersey.

Oct. 13, 1994.

---

Daniel Kinburn, Williams, Caliri, Miller & Otley, Wayne, NJ, for plaintiff Resolution Trust Co.

Edward N. Fitzpatrick, Clapp & Eisenberg, Newark, NJ, for defendant Moskowitz.

Laurence B. Orloff, Orloff, Lowenbach, Stifelman & Siegel, Roseland, NJ, for defendant Kramer.

Peter Bray, Bray, Chiocca, Rappaport & Rothstadt, Wayne, NJ, for defendant Koch.

W. Hunt Dumont, III, Robinson, St. John & Wayne, Newark, NJ, for defendant Wolff.

Chet Preston, Paterson, NJ, for defendant Kessler.

Stephen P. Del Mauro, Sauer & Del Mauro, E. Rutherford, NJ and Leonard Rosenstein, Hurley & Vasios, Short Hills, NJ, for defendant Vernon.

Joseph T. Afflitto, Sr., Diamond, Afflitto & Raimondi, Wayne, NJ, for defendant Ackerman.

John J. Byrne, III, Cornwell & Byrne, Wayne, NJ, for defendant Greenberg.

Robert A. Carmen, Parker, Chapen, Flattau & Klimpl, New York City, for defendants Dorfman, Abrams, Music & Co.

Evelyn A. Donegan, Tompkins, McGuire & Wachenfeld, Newark, NJ, for defendants Dorfman, Abrams, Music & Co., Ruitenberg, Ebner, McKinley, Harraka & Goldberg.

Paulette Pitt, Hayden, Perle & Silber, Weehawken, NJ, for defendant Biber.

Russell S. Burnside, Schneider, Nardone, Burnside & Jemas, Newark, NJ, for defendant Weiss.

Stanley M. Brand, Brand & Lowell, Washington, DC and Thomas J. Herten, Herten, Burstein, Sheridan & Cevasco, Hackensack, NJ, for defendants Schotz and Salzberg.

Karen Buerle, Hoagland, Longo, Moran, Dunst & Doukas, New Brunswick, NJ, for defendants Sciro, Marotta and Sciro & Marotta.

Charles A. Rizzi, Jr., Capehart & Scatchard, Mt. Laurel, NJ, for defendant B.K. Appraisal Services, Inc.

Andrew L. Liput, Hartman, Buhrman & Winnicki, Paramus, NJ, for defendant Rudd.

John P. Belardo, Krugman, Chapnick & Grimshaw, Saddle Brook, NJ, for defendant Zimel.

Nancy McDonald, McElroy, Deutsch & Mulvaney, Morristown, NJ, for defendant Fidelity & Deposit Co. of Maryland.

Gary Mizzone, Mizzone, Filko & Mizzone, W. Paterson, NJ, for defendant Giordani.

Steve Funk, Ross, Dixon & Masback, Washington, DC and Jacqueline Greenberg, Siff Rosen, Newark, NJ, for third-party defendant American Cas. Co. of Reading, PA.

## OPINION

WOLIN, District Judge.

Pending before this Court is the motion of the Resolution Trust Corporation ("RTC") for reconsideration of this Court's order dated August 31, 1994, granting partial summary judgment to Fidelity and Deposit Corp.

---

("F & D"). For the reasons stated below, the Court will deny in part and grant in part the RTC motion.

## BACKGROUND

This action concerns the closing and liquidation of United Savings Bank, SLA ("United"). On May 14, 1993, the RTC, as receiver, filed a blunderbuss-like complaint against certain of United's former officers and directors, along with others associated with United. The RTC also has sued United's fidelity bond insurance company, accountants, attorneys, appraisers, and certain borrowers. The RTC alleges that each is liable for United's insolvency. Specifically, the RTC asserts causes of action for breach of contract, negligence, gross negligence, breach of fiduciary duty, conversion and fraud. All defendants have filed answers to the RTC's complaint except for Wayne and Joanne Cross, Alan Taubenkimel,[1] Adland Realty, Inc., and Scott Paladini, all of who have had defaults entered against them.

The instant motion concerns RTC's attempt to recover under a fidelity bond issued to United by F & D for employee dishonesty. The F & D policy was in effect from February 17, 1989, to February 17, 1990. The policy has limits of $2.5 million, subject to a $25,000 deductible. This type of insurance policy is commonly referred to as a "banker's blanket bond" because it provides insurance coverage for a myriad of different risks faced by financial institutions.

F & D argues that RTC is not entitled to recover under the bond because it did not discover the employee dishonesty during the policy period, failed to timely notify F & D of its claim, and failed to timely file a proof of loss.

In its August 31, 1994, Opinion and Order (the "Opinion") this Court concluded that (1) when "discovery" occurred was a fact issue (Opinion, page 11); (2) proof of loss was filed late and the appreciable prejudice rule does not apply to the late filing of a proof of loss (Opinion, page 15); and there was no waiver

---

1. Magistrate Judge Joel A. Pisano has since granted Mr. Taubenkimel an extension of time to answer.

by F & D of the proof of loss requirement (Opinion, page 16). Because it found the proof of loss condition had been violated, the Court granted summary judgment to F & D.

RTC asks the Court to reconsider several points: (1) whether the F & D policy is a "claims-made" policy; (2) whether the appreciable prejudice rule applies to the late filing of a proof of loss; and (3) whether F & D waived compliance with the proof of loss requirement under the policy.

As diversity of citizenship provides the jurisdictional basis for this action, the Court must look to New Jersey law and attempt to predict how the New Jersey Supreme Court would answer these questions. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

## I. Motion to Reconsider

■ This Court recognizes that motions to reconsider or reargue under Local Rule 12(I) are granted "very sparingly." *Maldonado v. Lucca,* 636 F.Supp. 621, 630 (D.N.J.1986). However, courts will grant reconsideration when a party demonstrates "dispositive factual matter or controlling decisions of law" were presented to the Court but not considered. *Pelham v. United States,* 661 F.Supp. 1063, 1065 (D.N.J.1987). Courts also grant reconsideration when the case is complex and the ruling impacts on a new issue of law. *State of New Jersey Dept. of Human Services v. United States,* 740 F.Supp. 1067 (D.N.J.1990) (Chief Judge Anne Thompson reconsidered a ruling "because [the] case is complex and raises new issues of law."). RTC has raised several factual and legal issues which were overlooked by the Court including the difference between "discovery" insurance policies and "claims-made" insurance policies. In addition, the Court recognizes that this case is complex and raise new issues of law. Thus, the Court has decided to entertain the plaintiff's motion.

## II. "Discovery" Policies Versus "Claims-made" Policies

The Court's ruling was premised on its belief that the F & D policy was a "claims-made" insurance policy. However, upon reconsideration this Court finds that an examination of the language and history of the F & D policy reveals it is a "discovery" policy and not a "claims-made" policy.

■ The language of a "claims-made" policy states that the insurance company is obligated to provide insurance only for "claims made against the insured *and reported* to the company during the policy period." *Zuckerman v. National Union Fire Ins. Co.,* 100 N.J. 304, 307, 495 A.2d 395 (1985) (Defining a "claims-made" policy as one "limiting coverage to claims made against the insured and actually communicated to the company during the policy period.") (emphasis added). Thus, under a "claims-made" policy the policyholder must both suffer a loss and report the claim within the policy period. *Id.*

■ The language of a "discovery" policy provides that the insurance company is obligated to provide coverage for all losses discovered during the policy period. A "discovery" policy typically states the insurance shall apply to any "loss discovered by the Insured during the policy period." There is no requirement that the policyholder report the loss to the insurance company during the policy period. Rather, the "discovery" policy merely requires the policyholder to report this loss "as soon as practicable."

Thus, a side-by-side comparison of the language of "discovery" policies and "claims-made" policies reveals they are two different animals.

■ An examination of the F & D policy sold to United reveals that the F & D policy is a "discovery" policy and not a "claims-made" policy. Nowhere in the F & D policy are the hallmark words of a "claims-made" policy which limit coverage to "claims made against the insured *and reported* to the company during the policy period." *Zuckerman,* 100 N.J. at 307 (emphasis added). On the contrary, the F & D policy contains the hallmark language of a "discovery" policy. Section 3 of the F & D policy states under the heading "Discovery": "This bond applies to losses discovered by the Insured during the Bond period." And, Section 5 of the F & D policy requires: "At the earliest practical moment, not to exceed 30 days, after discov-

ery of loss, the Insured shall give the Underwriters notice thereof."

Thus, under the clear and unambiguous language of the F & D policy there is nothing that requires the policyholder to both suffer a claim and report the claim within the policy period. Under the F & D policy, a policyholder could discover a loss on the last day of the policy period and report it to the insurance company thirty days after the policy had expired. Therefore, the F & D policy cannot be construed as a "claims-made" policy. The F & D policy is a "discovery" policy.

The F & D policy is not only a "discovery" policy, it is a specialized form of insurance known as a "banker's blanket bond." The history of the banker's blanket bonds confirms that it is a totally different form of insurance from "claim-made" insurance.

In *Zuckerman*, the New Jersey Supreme Court recognized that the "claims-made" insurance policy originated in the 1970s as a means for underwriters to write insurance coverage for "perils that can cause latent injuries over an extended period of time [and where there] is difficulty in determining precisely when the essential causal event occurred." *Id.* 495 A.2d at 312. This is often true in medical malpractice, products liability and environmental litigation. *Id.*

The origin of the banker's blanket bond dates back to the turn of the century. Appleman, *Insurance Law and Practice*, § 5702 n. 1 ("blanket bonds started being written by United States companies in 1915 although they did not, by any means, take over the industry until years later."). Initially when a financial institution sought insurance coverage it had to buy a separate insurance policy for each risk such as robbery, forgery, employee dishonesty etc. These separate contracts eventually were combined into fewer and fewer instruments until it finally came down to a single instrument, now known as a banker's blanket bond. *Id.* § 5701. It was obviously beneficial to the banking industry to be able to buy one insurance contract that protected against both external and internal risks. And the banker's blanket bond was beneficial to the insurance industry because it enabled the insurance company to corral all of the bank's business at once. *Id.*

■ The very name of this insurance policy "blanket bond" is broad and suggests the policy should be construed broadly. *Id.* Indeed, courts nationwide traditionally have construed the banker's blanket bonds very liberally. *Id.* § 7504. In contrast, courts traditionally have construed "claims-made" policies very narrowly. *See, e.g., Zuckerman*, 100 N.J. 304, 495 A.2d 395.

Thus, it is clear that the F & D policy is a banker's blanket bond written on "discovery" policy form. As a result, this Court will vacate that portion of its Opinion finding that the F & D policy was a "claims-made" insurance policy.

## III. Proof of Loss

The F & D policy section 5(b) requires: "Within 6 months after discovery [of a loss], the Insured shall furnish to the Underwriter proof of loss, duly sworn to, with full particulars." F & D claims that proof of loss was not timely filed. Moreover, F & D claims that it need not show any prejudice in order to deny coverage for failure to timely file a proof of loss. RTC counters, that the insurance company must prove it has been prejudiced by the failure of the policyholder to timely file a proof of loss.

■ It is well-established, that under New Jersey law an insurance company must prove "appreciable prejudice" before it can deny a claim based on late notice of a claim. *Cooper v. Government Employees Ins. Co.*, 51 N.J. 86, 94–95, 237 A.2d 870 (1968); *Molyneaux v. Molyneaux*, 230 N.J.Super. 169, 553 A.2d 49 (App.Div.1989); *Solvents Recovery Service of New England v. Midland Ins. Co.*, 218 N.J.Super. 49, 526 A.2d 1112 (App.Div.1987). This Court's conclusion that the appreciable prejudice rule does not apply to the instant case was rooted in its belief that the F & D policy was a "claims-made" policy. The Court relied on *Zuckerman*, where the New Jersey Supreme Court held that the appreciable prejudice rule does not apply to "claims-made" policies. 100 N.J. at 323, 495 A.2d 395.

Because this Court today concludes that the F & D is a "discovery" policy it must

reconsider whether the appreciable prejudice rule should apply. In order to reach this decision, the Court must decide: (1) whether the appreciable prejudice rule should apply to "discovery" policies and (2) whether the appreciable prejudice rule should apply to the proof of loss requirement.

## A. Should the Appreciable Prejudice Rule Apply to "Discovery" Policies?

In *Zuckerman*, the New Jersey Supreme Court refused to apply the appreciable prejudice rule to a "claims-made" insurance policy. 100 N.J. at 323, 495 A.2d 395. The Court reasoned that the requirement in a "claims-made" policy that the policyholder report the claim during the policy period defined the coverage and, therefore, had to be strictly enforced. The New Jersey Supreme Court held: "[T]he event that invokes coverage under a 'claims-made' policy is transmittal of notice of the claim to the insurance carrier." *Id.* at 324, 495 A.2d 395. As a result, the Court concluded that it was necessary to strictly enforce the period of time in which an insured under a "claims-made" insurance policy could notify its insurance company of a claim. *Id.*

■ On the other hand, the Court in *Zuckerman* also recognized that it was proper to apply the appreciable prejudice rule to "occurrence" policies. *Id.* at 323, 495 A.2d 395. Under an "occurrence" policy the policyholder is insured for any loss that occurs during the policy period regardless of when the claim is filed. *Id.* at 310–11, 495 A.2d 395. Occurrence policies typically require the policyholder to notify the insurance company "as soon as practicable" of a loss under the policy. *Id.* at 323, 495 A.2d 395. The New Jersey Supreme Court concluded that the "notice requirement in an occurrence policy did not define the coverage provided by the policy, but rather was included to aid the insurance carrier in investigating, settling, and defending claims." *Id.* Therefore, the Court held "the requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage, and the conditions related to giving notice should be liberally and practically construed." *Id.* at 324, 495 A.2d 395.

■ In a "discovery" policy, the event that defines the coverage is the discovery by the policyholder of a loss during the policy period. The notice provision in Section 5 of the F & D policy merely requires the policyholder to report this loss "as soon as practicable." Thus, it cannot be said that the notice provision defines the scope of coverage under a "discovery" policy. In a "discovery" policy, as in an occurrence policy, the notice requirement merely aids the insurance company in investigating the claim. As a result, the notice requirement and the conditions related to giving notice in a "discovery" policy "should be liberally and practically construed." *Zuckerman*, at 324, 495 A.2d 395. The long-standing New Jersey rule requiring an insurance company to prove "appreciable prejudice" before denying a claim based on late notice should be applied to "discovery" policies.

## B. Should the Appreciable Prejudice Rule Apply to the Proof of Loss Provision?

■ F & D argues that no New Jersey Court has ever extended the appreciable prejudice rule to the proof of loss provision. That is true. By the same token, no New Jersey court has ever refused to apply the appreciable prejudice rule to the proof of loss provision. The fact is that this issue simply has not been squarely resolved by any New Jersey court. (*Cf. Solvents Recovery v. Midland Ins. Co.*, 218 N.J.Super. 49, 526 A.2d 1112 (App.Div.1987) (discussed *infra*)).

F & D's reliance on *Brindley v. Fireman's Insurance Co. of Newark*, 35 N.J.Super. 1, 113 A.2d 53 (App.Div.1955) for the proposition that the proof of loss provision must be strictly enforced is wholly unpersuasive as this case was decided several years before the appreciable prejudice rule was set forth in *Cooper v. Government Employees Ins. Co.*, 51 N.J. 86, 94–95, 237 A.2d 870 (1968). Moreover, *Brindley* is not persuasive since the holding in this case was that *complete failure* to file a proof of loss was fatal to recovery under the insurance policy. The Court never addressed the issue of whether late filing of a proof of loss was fatal to recover under the insurance policy.

Similarly, F & D's reliance on *National Newark & Essex Bank v. American Insurance Co.*, 76 N.J. 64, 385 A.2d 1216 (1978) is not persuasive since this case merely found that the untimely filing of a proof of loss tolled the contractual statute of limitations. More importantly, the court in *National Newark & Essex*, found that the filing of proof of loss filed over six months late did not constitute "undue delay." *Id.* at 84, 385 A.2d 1216.

In addressing whether the appreciable prejudice rule should apply to the late filing of a proof of loss, this Court does not write on a blank slate. The New Jersey Appellate Division in *Solvents Recovery v. Midland Ins. Co.*, held that the appreciable prejudice rule should apply to several conditions of the "occurrence" policy it was asked to interpret. 218 N.J.Super. 49, 526 A.2d 1112 (App.Div. 1987). Specifically, the Appellate Division found that the appreciable prejudice rule should apply to: Section 4(a), which requires timely notice of a claim; Section 4(b), which requires the insured to forward all relevant documents; and Section 4(c), which requires that the policyholder cooperate with the insurance company, and not make any voluntary payments. 218 N.J.Super. at 53–54, 526 A.2d 1112. The Court held: "It is clear that the late notice defenses raised by the carrier under subparagraphs 4(a), 4(b) and 4(c) cannot be sustained unless the carrier satisfies the burden of proving that it suffered appreciable prejudice by the reason of the insured's failure to comply." *Id.* at 54, 526 A.2d 1112. Moreover, the Appellate Division held:

> We are not persuaded that where the insured has acted in good faith the consequences of a violation of the condition that the insured cooperate with the company and afford the company the right to control both the litigation and the settlement of claims should weigh any more heavily in favor of the forfeiture of coverage, absent a showing of appreciable prejudice, than violations of conditions of subparagraphs 4(a) and 4(b) which require timely notification of the happening of the occurrence and receipt of a claim or suit. Insurance contracts are not truly consensual arrangements; they are available only on a take-it-

or-leave-it basis. *Cooper*, 51 N.J. at 94 [237 A.2d 870]. We are satisfied that the policy enunciated by our Supreme Court in *Cooper*, of requiring the carrier to bear the burden of persuasion of a likelihood of appreciable prejudice is the standard that should be applied to a violation of subparagraph 4(c) as well as 4(a) and 4(b).

*Id.* at 55, 526 A.2d 1112.

As a preliminary matter this Court points out that Section 4(b) of the insurance policy in *Solvents Recovery* is analogous to the proof of loss requirement in the F & D policy. Section 4(b) of the insurance policy at issue in *Solvents Recovery* required the policyholder to forward documents that describe the claim. The proof of loss requirement in the F & D policy requires the policyholder to file a sworn statement that describes the claim. Thus, the two provisions are similar in that they both serve to apprise the insurance company of the details of the claim. Since the two provisions serve the same function, it makes no sense to apply the appreciable prejudice rule to one and not the other. Thus, this Court concludes that the New Jersey Supreme Court would find that the an insurance company must prove appreciable prejudice before denying a claim based on the late filing of proof of loss.

This Court also finds support for its holding in *Oritani Savings & Loan Association v. Fidelity & Deposit Co. of Maryland*, 744 F.Supp. 1311, *rev'd on other grounds*, 989 F.2d 635 (3d Cir.1993). In *Oritani*, the court held that the appreciable prejudice rule should apply to a proof of loss provision in a banker's blanket bond, identical to the proof of loss provision in the F & D bond. In *Oritani*, as in the instant case, the insurance company attempted to deny insurance coverage because the policyholder failed to timely file a proof of loss. *Id.* at 1317. The Court held: "Where a technical requirement in an insurance policy is not strictly met, the New Jersey courts will nevertheless provide coverage, unless the insurer demonstrates appreciable prejudice.... Prejudice will not be presumed but must be proved, and the burden of proof is on the insurer." *Id.* (citations omitted). Thus, *Oritani* stands for

the proposition that an insurance company must prove appreciable prejudice before denying coverage based on the late filing of a proof of loss under a banker's blanket bond.

The Third Circuit also has indicated its support for applying the appreciable prejudice rule to the proof of loss provision. In *Hospital Support Services Ltd. v. Kemper Group Inc.*, 889 F.2d 1311 (3d Cir.1989), the Third Circuit, applying Pennsylvania law, held that the insurance company must prove prejudice before denying coverage based on a provision that limits the time for the filing of a lawsuit against the insurance company. In reaching this conclusion, the Third Circuit examined the theoretical underpinnings of the prejudice rule. First, the Court recognized that because the notice provision of standard-form insurance policies were neither negotiated nor bargained for, an insurance company must "provide a sound reason" before it can deny coverage. *Id.* at 1313 (citations omitted). Second, the Circuit Court recognized that the purpose of notice provision is to "give the insurer the opportunity to acquire, through adequate investigation, full information about the circumstances of the case." *Id.* (quoting *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 74, 371 A.2d 193, 197 (1977)). The Third Circuit recognized that since the purpose of the notice provision is to prevent the insurance company from being prejudiced, it only makes sense to require the insurance company to prove prejudice before denying coverage. *Id.*

This Court finds the reasoning of *Hospital Support Services* persuasive. Since the purpose of the proof of loss provision, like the notice provision, is to enable the insurance company to investigate and pay the claim without prejudice, it only makes sense to require the insurance company to prove prejudice before denying coverage based of the late filing of a proof of loss.

The Second Circuit Court of Appeals, interpreting New Jersey law, squarely held that the an insurance company must prove prejudice before it can deny a claim based on the late filing of a proof of loss. *Gladstone v. Fireman's Fund Ins. Co.*, 536 F.2d 1403 (2d Cir.1976). In *Gladstone*, the policyholder sought coverage under a Jewelers Block Policy for theft losses. The Second Circuit, held: "Assuming for the sake of argument that the notice and proof of loss requirement contained in the policy were not met by Gladstone, there has not been proof or even an offer of proof by Fireman's Fund that it suffered any prejudice from Gladstone's technical failures." *Id.* at 1407 (citing *Cooper*, 51 N.J. 86, 237 A.2d 870). The Second Circuit held that although the appreciable prejudice rule originated under occurrence-based policies, there was "no reason" not to apply the rule to other forms of insurance. *Id.*

This Court's decision to apply the appreciable prejudice rule to the proof of loss requirement is further buttressed by several decisions from federal and state courts nationwide. These courts have held that where an insurance company must prove prejudice before denying a claim based on a late notice, the insurance company also must prove prejudice before denying a claim based on late filing of a proof of loss.

For example, in *Home Life Insurance Co. v. Clay*, 11 Kan.App.2d 280, 719 P.2d 756 (1986), the Kansas Court of Appeals held that an insurance company that issued a banker's blanket bond, identical to the bond at issue in this litigation, must prove prejudice before it can deny coverage based on the late filing of a proof of loss. The court reasoned: "The bonds ... are to be interpreted to accomplish indemnity against loss sustained ... [notice and proof of loss] are not cast-iron conditions precedent to liability, but are reasonable reservations made to afford the insurer an opportunity to protect itself against loss should it need and should it be able to do so." *Id.* at 288–89, 719 P.2d 756 (quoting *School District v. McCurley*, 92 Kan. 53, 142 P. 1077 (1914)).

Similarly, in *Perry v. Middle Atlantic Lumbermens Ass'n*, 373 Pa.Super. 554, 542 A.2d 81 (1988), the Pennsylvania Superior Court held that a group health insurer failed to prove prejudice from the late filing of proof of loss. The court first noted that Pennsylvania, like New Jersey, requires insurance companies to prove prejudice before denying coverage based on the late filing of notice of a claim. The court then reasoned:

The purpose of a provision for the notice and proofs of loss is to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it ... where it appears that the insured has not substantially complied with the proof of loss provisions in the policy, the insurer is required to prove it has suffered prejudice as a consequence of the breach.

*Id.* at 570, 542 A.2d 81 (citations omitted).

Other state courts are in agreement. In *Fehring v. Republic Insurance Co.*, 118 Wis.2d 299, 347 N.W.2d 595 (1984), the Wisconsin Supreme Court held that a home insurer was not prejudice by a policyholder's failure to render proof of loss within 60 days after loss. In, *Maine Mutual Fire Insurance Co. v. Watson*, 532 A.2d 686 (Me.1987) the Maine Supreme Court held that fire insurer was not prejudice by a policyholder's late filing of proof of loss. In *Buffalo Insurance Co. v. Star Photofinishing Co.*, 120 Ga. App. 697, 172 S.E.2d 159 (1969), the Georgia Appellate Court held that a property insurer was not prejudice by the late filing proof of loss. In *Judge v. Celina Mutual Insurance Co.*, 303 Pa.Super. 221, 449 A.2d 658 (1982), the Pennsylvania Superior Court held that a fire insurance company which had ample opportunity to inspect the burned building and was mailed proof of loss statement within seventy-two days, did not show prejudice from the policyholder's failure to file proof of loss within sixty days.

Federal courts nationwide are also in agreement. In *Haskins v. Occidental Life Insurance Co. of California*, 349 F.Supp. 1192 (E.D.Ark.1972), the District Court held that accident insurer must prove prejudice before denying a claim based on late filing of proof of loss. In *Mechem Financial Inc. v. Maryland Insurance Group*, 167 B.R. 799 (W.D.Pa.1994), the Bankruptcy Court held: "We view the purpose of the notice of loss and a formal proof of loss as the same—the avoidance of prejudice to an insurer in handling a claim due to a lapse of time. As with late Notice of Loss, the insurance company must show prejudice from the absence of a formal proof of loss before obtaining exoneration of liability." *Id.* at 804.

Therefore, this Court concludes that F & D must prove prejudice before it can deny RTC's claim based on the late filing of proof of loss. Because the issue of prejudice is fact-laden, this Court will deny summary judgment to F & D and vacate this portion of its earlier opinion.

## IV. Waiver of Proof of Loss

RTC asks this Court to reconsider that portion of its earlier opinion finding that F & D did not waive compliance with the proof of loss provision. RTC has failed to meet its burden on this point. As a preliminary matter, RTC has failed to show this Court something that was overlooked during its initial decision such as to warrant reconsideration on this point. *Pelham v. United States*, 661 F.Supp. 1063, 1065 (D.N.J.1987). More importantly, RTC has not created a triable issue of fact with regard to waiver. As this Court held earlier, there is simply no proof that F & D did anything which waived its rights. Mere silence cannot create a waiver. RTC's request for reconsideration on this point is denied. F & D did not waive its right to enforce the proof of loss provision in its policy.

### CONCLUSION

For the foregoing reasons, this Court will grant RTC's motion to reconsider that portion of its Opinion holding that the F & D policy is a "claims-made" policy. The F & D policy is a "discovery" policy. Similarly, this Court will grant RTC's motion to reconsider that portion of its Opinion holding that New Jersey's appreciable prejudice rule does not apply to the late filing of proof of loss. An insurance company must prove appreciable prejudice before denying coverage as a result of a policyholder's late filing of a proof of loss. Finally, this Court will deny RTC's motion to reconsider that portion of its Opinion holding that F & D did not waive its right to enforce the proof of loss provision.

Dated: October 13, 1994