**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

No: 03-4190

————————————

TIMOTHY CORBETT,

Appellant,

v.

SEALY, INC.

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 01-CV-1648
District Judge: The Honorable Maurice B. Cohill, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
January 11, 2005

Before: ROTH and CHERTOFF[*], *Circuit Judges*, and SHAPIRO[**], *District Judge*.

(Opinion filed: March 17, 2005)

————————————————————

[*]This case was submitted to the panel of judges Roth, Chertoff and Shapiro. Judge Chertoff resigned after submission, but before the filing of the opinion. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

[**]Honorable Norma L. Shapiro, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

_____

## OPINION
_____

SHAPIRO, *District Judge.*

Timothy Corbett ("Corbett") brought this action alleging gender discrimination against Sealy, Inc. ("Sealy") under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). He appeals the District Court's grant of summary judgment in favor of Sealy.

## I. FACTS AND PROCEDURAL HISTORY

Corbett worked at Sealy for sixteen years, first as a laborer, then in management, where he attained the position of production supervisor of the sewing room. In his capacity as supervisor, Corbett oversaw Kathy Kriebel ("Kriebel"), described by Corbett as a "verbally crude" employee who "frequently used foul, vulgar, and explicit language." Corbett had previously complained to Sealy management that Kriebel had pinched the rear of a co-worker, but Sealy took no action.

On October 18, 2000, Corbett and several co-workers were discussing camouflaged hunting pants Corbett had received from a co-worker. Kriebel told the group she could tell they were from a local high school, to which Corbett responded, "Yeah, I've got your little boy's pants right here." (Corbett deposition, A-45) Joking, Corbett then gestured as if he were going to unzip his pants, but did not actually do so. Kriebel responded, "Let me see, let me see." Corbett laughed and said, "No." Kriebel

2

replied "I knew you didn't have a hair on your ass to do that." Another male employee, Garret Goheen ("Goheen"), pulled his pants down an inch or two.

The following day, Corbett assigned Kriebel to finish pillow tops, a job not normally hers. Kriebel said she would not "effing do that job," and suggested someone less senior should do it. After further discussion, Kriebel agreed to do the job, but threatened to complain to her union. She did so, and also complained about the events of October 18 ("the October 18 Incident"). The union then contacted Sealy's Vice President of Human Resources, Tom Brown ("Brown").

On October 20, 2000, Corbett met with Brown and plant manager Jim Staab at the request of Brown to discuss the October 18 Incident. Corbett told them what happened and who was there. Later that day, Brown told Corbett he had talked to the witnesses, and they corroborated Corbett's version of the incident. Several days later, Brown suspended Corbett with pay while the incident was investigated further. Brown said other witnesses saw Corbett pull his zipper down, but Corbett denied it. Brown also accused Corbett of retaliating against Kriebel by looking at her in the wrong manner.

Two days later, Brown completed his investigation, and concluded Corbett had made an inappropriate gesture. Corbett was permanently discharged for violation of the Sealy non-harassment policy.[1] A letter emphasizing the non-harassment policy was

---

[1]The non-harassment policy states: "Harassment is considered an act of misconduct which will result in disciplinary action including discharge if the situation warrants." The policy defines harassment as:

placed in Kriebel's employee file. Goheen, who had pulled his pants down an inch or two, received a warning letter. Corbett requested and received an exit interview with the president of human resources and vice president of operations at Sealy's corporate offices. Corbett said the October 18 Incident was simply a joke over hunting pants, and denied any intent to sexually harass Kriebel. Sealy upheld his termination.

Corbett filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC, finding no discrimination, issued a right-to-sue letter. Corbett filed this action against Sealy for violations of Title VII and the PHRA. The District Court granted summary judgment for Sealy on both counts. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 42 U.S.C. § 2000e *et seq.* This court has jurisdiction under 28 U.S.C. § 1291. Our review is plenary. *Hampe v. Butler*, 364 F.3d 90, 93 (3d Cir. 2004). We apply the same test as the District Court under Federal Rule of Civil Procedure 56(c). *See Kelley v. TYK Refractories Co.*, 860 F.2d 1188, 1192 (3d Cir.1988). Summary judgment may be granted only if there is no genuine issue as to any

---

...unwelcome or unsolicited sexual, physical, verbal or written conduct which creates or contributes to a hostile or offensive work environment. Harassment is also verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of his/her race, color, religion, gender, national origin, age or disability, and that (i) has the purpose or effect of creating an intimidating, hostile, or offensive work environment; (ii) has the purpose or effect of unreasonably interfering with an individual's work performance, or (iii) otherwise adversely affects an individual's employment opportunities.

material fact and Sealy is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In evaluating the evidence, we interpret facts in the light most favorable to Corbett, and draw all reasonable inferences in his favor. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir.2001).

## II. DISCUSSION

### A. Sex Discrimination Under Title VII

Corbett alleges Sealy disciplined him more harshly than Kriebel because he is male, a violation of 42 U.S.C. § 2000e-2.[2] Sex discrimination against males has been dubbed "reverse discrimination." *See Iadimarco v. Runyon*, 190 F.3d 151, 155 (3d Cir. 1999). In *Iadimarco*, this Court defined a modified burden-shifting analysis that differs slightly from the usual test under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Corbett must establish a *prima facie* case by presenting sufficient evidence to allow a factfinder to conclude Sealy treated some people less favorably than others based on sex. *Iadimarco*, 190 F.3d at 161. The burden then shifts to Sealy to articulate a legitimate, nondiscriminatory reason for firing Corbett. *Id.* at 157. If Sealy succeeds, the burden shifts back to Corbett to show Sealy's reason for firing him was pretextual. *Id.* at

---

[2] Section 2000e-2 states, in relevant part:

It shall be an unlawful employment practice for an employer–

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

166. Corbett must point to evidence from which a reasonable factfinder could either: 1) disbelieve Sealy's alleged nondiscriminatory reason; or 2) believe an invidious discriminatory reason was more likely than not a motivating or determinative cause of his firing. *Id.* If Corbett offers evidence "that would allow reasonable minds to conclude that the evidence of pretext is more credible than the employer's justifications, the employer's motion for summary judgment must fail." *Id.*

The District Court applied the modified burden-shifting analysis under *Iadimarco* to Corbett's reverse discrimination claim. To establish a *prima facie* case, Corbett claimed disparate treatment of him relative to Kriebel. Corbett had reported Kriebel for pinching a male worker's rear and she had frequently used vulgar language, but Sealy had taken no disciplinary action. After the October 18 Incident, Sealy fired Corbett, but merely placed a letter in Kriebel's file. The District Court, rejecting this argument, found that: 1) Brown, who investigated the October 18 Incident, was never made aware of Kriebel's past conduct; 2) Sealy treated Corbett more harshly than Kriebel because he was a supervisor; and 3) Goheen, who was treated less harshly than Corbett, was male. Considering the totality of this evidence, the District Court held no reasonable factfinder could find Sealy treated Corbett more harshly because he was male, so that Corbett failed to establish a *prima facie* case, and even if he had, Corbett could not show Sealy's legitimate nondiscriminatory reason for firing him was pretextual.

Considering the facts alleged and the inferences therefrom in favor of Corbett, a

reasonable factfinder could conclude Sealy treated him more harshly than Kriebel because he was male. A reasonable factfinder could also conclude that Brown was never made aware of Kriebel's vulgar behavior because Sealy's failure to investigate was discriminatory. Corbett did establish a *prima facie* case.

However, Sealy articulated a legitimate, nondiscriminatory reason for firing Corbett while retaining Kriebel: Corbett, who violated Sealy's non-harassment policy by gesturing towards Kriebel on October 18, and later eying her in a retaliatory manner, was a supervisor, while Kriebel was not. Sealy could reasonably hold management to a higher standard than laborers. This nondiscriminatory reason is supported by Sealy's treatment of Goheen, a laborer who was reprimanded in the same lenient fashion as Kriebel even though he was male.

The burden then shifted to Corbett to show Sealy's reason was pretextual. Corbett argued the non-harassment policy prohibits *un*solicited behavior, and that Kriebel solicited his gesture by responding, "Let me see, let me see." But the non-harassment policy is not limited to unsolicited behavior. Sealy could reasonably have found Corbett's behavior was harassment since the policy's defined harassment as "verbal or physical conduct that denigrates or shows hostility or aversion toward an individual..." Corbett admitted he made the unzipping gesture before Kriebel responded, "Let me see, let me see." His gesture could not have been solicited by conduct that had not yet occurred. He offered no evidence that Sealy's explanation was pretextual.

**B. Sex Discrimination Under the Pennsylvania Human Relations Act**

Claims under the PHRA are interpreted coextensively with Title VII claims. *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996). Since Corbett failed to establish a claim of sex discrimination under Title VII, summary judgment for Sealy on the PHRA claim was not error.

**III. CONCLUSION**

Corbett established a *prima facie* case of discrimination, but Sealy presented a legitimate, nondiscriminatory reason for firing him. Corbett did not present evidence that Sealy's reason was pretextual. While Sealy's treatment of Corbett may have been harsh, it was not illegal sex discrimination.[3] The District Court's grant of summary judgment was not in error.

**AFFIRMED.**

---

[3] That Sealy may have reacted to union pressure was not before the District Court.